IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEBORAH BUSH GERVASI, Individually and )
on Behalf of the Estate of Richard A. Whiting, )
                                                    )   No. 3:12-cv-00627
      Plaintiff,               )
                                                    )   Judge Nixon
v.                                                  )   Magistrate Judge Bryant

WARNER/CHAPPELL MUSIC, INC., )
a Division of Warner Music Group Corp.,)   JURY DEMAND
      Defendant.            )

## ORDER

Pending before the Court is Defendant Warner/Chappell Music, Inc.'s ("WCM") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") (Doc. No. 13), filed with a Memorandum in Support (Doc. No. 14) and an exhibit (Doc. No. 14-1). Plaintiff Deborah Bush Gervasi filed a Response in Opposition ("Response") (Doc. No. 17), to which WCM filed a Reply (Doc. No. 19). For the reasons given below, WCM's Motion is **GRANTED in part** and **DENIED in part**. Also pending before the Court are the parties' Joint Motion to Continue Trial Date and Deadlines (Doc. No. 33) and Gervasi's Unopposed Motion for Status Conference (Doc. No. 34). By virtue of this Order the Motion to Continue Trial Date and Deadlines (Doc. No. 33) and the Motion for Status Conference (Doc. No. 34) are **TERMINATED AS MOOT**. The Court hereby **REFERS** the case to the Magistrate Judge for further case management.

1

I. BACKGROUND

   *A. Factual Background[1]*

Gervasi is the heir and legal rights holder to the intellectual property and estate of her grandfather, Richard A. Whiting ("Whiting"), a well-known composer from the early 20th Century. On or about August 23, 1936, Whiting entered into a publishing agreement (the "1936 Contract") with Warner Bros. Pictures Inc., under which Whiting would compose musical arrangements in exchange for royalties calculated as a percentage of profits made from their use. Whiting passed away on February 10, 1938, leaving the rights to his intellectual property and estate to his wife, Eleanore Y. Whiting, including renewal copyrights to certain compositions he created for Warner Bros.

On or about August 27, 1943, Eleanore Whiting entered into a Renewal Agreement with WCM's predecessor, under which she assigned and transferred her interest in the renewal copyrights of Whiting's compositions to WCM's predecessor. In exchange, she was to receive royalties payments in the amount of 50% of the publishing income WCM's predecessor received from licenses for reproductions of Whiting's compositions in the United States.

In May 2007, Gervasi discovered that WCM had allegedly failed to honor the Renewal Agreement by paying her family at a rate lower than 50% of the licensing royalties for thirteen of Whiting's compositions. Gervasi contacted the Songwriters' Guild of America ("SGA") in July 2007 for assistance in reviewing the Renewal Agreement and in obtaining an explanation from WCM for the discrepancy in the payments for licenses of the thirteen Whiting compositions. SGA agreed with Gervasi's allegation and contacted WCM on her behalf in February 2008.

---

[1] All facts are taken from Plaintiff's First Amended Complaint (Doc. No. 4), unless otherwise noted.

2

On March 26, 2010, WCM informed Gervasi that the thirteen Whiting compositions to which she claimed WCM had been underpaying royalties were not subject to the Renewal Agreement, and instead remained governed by the 1936 Contract. WCM stated that the royalties due on the thirteen Compositions at issue remain subject to the percentage rates provided in the 1936 Contract rather than the Renewal Agreement, and thus, there had been no error in the payments made over the years.

On March 28, 2011, upon the death of Eleanore Whiting's daughter, Gervasi became the heir and legal rights holder to the Whiting estate. On September 2, 2011, SGA responded on Gervasi's behalf to WCM's March 26, 2010, determination that the Renewal Agreement percentage rates were not applicable to royalties for the thirteen compositions in dispute. SGA dismissed WCM's initial response as inadequate and demanded WCM pay Gervasi the full royalties due under the Renewal Agreement for the license of the thirteen compositions. Gervasi continued to contact WCM demanding an adequate response until WCM responded in April 2012. In this second response, WCM reiterated that the thirteen compositions at issue were subject only to the 1936 Contract and not the Renewal Agreement.

Following WCM's April 2012 response, Gervasi brought this cause of action for (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) accounting; and (4) declaratory judgment. WCM moves to dismiss this cause of action with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 13 at 1.)

*B. Procedural Background*

Gervasi filed a Complaint in this case on June 20, 2012 (Doc. No. 1), and subsequently filed a First Amended Complaint on June 22, 2012 (Doc. No. 4), along with two exhibits (Doc. Nos. 4-1 to 4-2). WCM filed its Motion to Dismiss Plaintiff's First Amended Complaint on

3

December 3, 2012 (Doc. No. 13), along with a Memorandum in Support (Doc. No. 14) and a supporting exhibit (Doc. No. 14-1). Gervasi filed a Response in Opposition on December 27, 2012 (Doc. No. 17), to which WCM filed a Reply on January 14, 2013 (Doc. No. 19).

## II. LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'merely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal brackets omitted)).

When ruling on a defendant's motion to dismiss, the Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). The Court should allow "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. However, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555. "'[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss," *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted), and mere recitation of the elements of a cause of action "or an "unadorned, the-defendant-unlawfully-harmed-me accusation" will not do, *Iqbal*, 556 U.S. at

4

678; *Twombly*, 550 U.S. at 555. While the court must accept "as true all non-conclusory allegations in the complaint," *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009), it does not have to accept unsupported legal conclusions, *Iqbal*, 556 U.S. at 678.

Additionally, while the court will not generally consider matters outside of the pleadings when ruling on a motion to dismiss, "the court may . . . consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005). Any "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

### III. ANALYSIS

WCM argues each of Gervasi's claims in the First Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 13.) Specifically, WCM argues that the equitable doctrine of laches prohibits Gervasi from bringing a breach of contract claim after her predecessors in interest accepted payment under the contract for over 60 years. (*Id.* at 1.) In her Response, Gervasi agrees to dismissal without prejudice of her breach of duty of good faith and fair dealing claim as well as her accounting claim. (Doc. No. 17 at 12.) Accordingly, with respect to Gervasi's breach of duty of good faith and fair dealing claim and her accounting claim, Defendant's Motion is **GRANTED**: Counts II and III of the First Amended Complaint are **DISMISSED without prejudice**. The Court now addresses WCM's arguments with respect to Counts I and IV, Gervasi's breach of contract and declaratory judgment claims.

*A. Breach of Contract*

For the purposes of this Motion, the parties agree that the breach of contract claim is governed by Tennessee Law. (*See* Doc. Nos. 4 ¶ 13; 14 at 8.) WCM argues Gervasi's breach of contract claim is barred by laches because Gervasi's predecessors in interest accepted contract payments for more than 60 years without complaining that WCM was in breach of contract. (Doc. No. 14 at 5–8.) In the alternative, WCM argues Gervasi may not seek damages for alleged breaches that occurred prior to March 28, 2011, because she had no legal rights under the contract before that date. (*Id.* at 8.) In addition, WCM argues that the applicable statute of limitations bars any claims for breach of contract that allegedly occurred prior to June 20, 2006. (*Id.* at 8–9.)

Gervasi responds that she has not pleaded any facts to support a gross laches defense, and that gross laches is a fact-based defense not appropriately decided on a motion to dismiss. (Doc. No. 17 at 5–8.) Gervasi also argues that, because she is seeking damages on behalf of the Whiting estate, she is not limited to alleging damages occurring only after she inherited rights to the estate (*id.* at 9 n.2) and further that, as the discovery rule applies to her claims, she is not prohibited from alleging breaches occurring more than six years prior to the date she initiated this suit (*id.* at 9–10). Because the application of laches will depend upon whether the cause of action is time-barred by a statute of limitations, the Court first assesses the relevant statute of limitations and then analyzes whether laches bars the breach of contract claim.

1. <u>Statute of Limitations</u>

The applicability of the doctrine of laches is dependent upon whether or not the cause of action is subject to a statutory limitations period, and whether suit was commenced within that time. *See Dennis Joslin Co. v. Johnson*, 138 S.W.3d 197, 201 (Tenn. Ct. App. 2003)

(explaining that, when the statutory period to bring a cause of action has not run, laches "should [only] be applied in such cases when there is gross laches in the prosecution of the claim"). Under Tennessee law, actions on "contracts not otherwise expressly provided for" must be commenced "within six (6) years after the cause of action accrued." Tenn. Code Ann. § 28-3-109(a)(3) (2013). With respect to an entire contract, guaranteeing continued performance of a party, "an action can be maintained on it only when a breach occurs or the contract is in some way terminated, and the statute begins to run from that time only." *Greene v. THGC, Inc.*, 915 S.W.2d 809, 811 (Tenn. Ct. App. 1995) (quoting 54 C.J.S. *Limitations of Actions*, § 154 (1987)).

The contract at issue in this case is an entire contract, as there does not appear to be any intent of the parties to create divisible parts to be enforced as separate contracts. As such, Gervasi's cause of action accrued on the date WCM made the first alleged underpayment on the Renewal Agreement to Gervasi's predecessors in interest. Although Gervasi fails to allege on what date the breach first occurred, she does allege that in May 2007, she discovered that WCM had been paying her predecessors less than the percentage agreed to in the Renewal Agreement. (Doc. No. 4 at 4.) Though Gervasi admits in her Response that she is uncertain when WCM began underpaying (Doc. No. 17 at 3), as she filed suit on June 20, 2012, to fall within the statute of limitations, WCM's first underpayment would have to have occurred no earlier than June 21, 2006.

However, even should the alleged breach have occurred prior to June 21, 2006, Gervasi may still argue her claim is not barred by the statute of limitations by virtue of the discovery rule. The discovery rule operates to toll a statute of limitations until the plaintiff discovers, or "in the exercise of reasonable care and diligence" should have discovered, an injury giving rise to a cause of action. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002). The

7

discovery rule was first applied in Tennessee to a medical malpractice case. *See Teeters v. Curry*, 518 S.W.2d 512, 515 (Tenn. 1974). It has since been widely applied to various tort actions, *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994), as well as certain breach of contract cases subject to the six-year statute of limitations set forth in Tenn. Code Ann. § 28-3-109(a)(3), *see Goot v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2003-02013-COA-R3-CV, 2005 WL 3031638, at *11 (Tenn. Ct. App. Nov. 9, 2005) (explaining that although the discovery rule will generally not be applicable in breach of contract cases, in cases where "a party to a contract would not be aware that the other party has breached the contract . . . it would be unjust" to not apply the discovery rule); *Taylor v. Metro. Gov't of Nashville & Davidson Cnty*, No. M2007-01774-COA-R3-CV, 2008 WL 5330502, at *7–8 (Tenn. App. Ct. Dec. 19, 2008); *House v. Edmondson*, No. W2005-00092-COA-R3-CV, 2006 WL 1328810, at *15–17 (Tenn. Ct. App. May 16, 2006).

In breach of contract cases, the discovery rule applies where the breach of contract is "inherently undiscoverable" through no fault of the plaintiff. *Goot*, 2005 WL 3031638, at *11 n.31 (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 214–15 (5th Cir.1999)). "The inherently undiscoverable requirement is met when the injured party is unlikely to discover the wrong during the limitations period despite due diligence." *Networks USA X, Inc. v. Nationwide Mut. Ins. Co.*, 748 F. Supp. 2d 836, 844 (E.D. Tenn. 2010) (quoting *Capital TCP, LLC v. New Horizon Memphis, LLC*, No. 2:07-cv-02157-JPM-dkv, 2010 WL 2734148, at *5 (W.D. Tenn. July 9, 2010)).

Here, whether Gervasi's predecessors in interest could have discovered WCM's alleged breach prior to 2007 is dependent on what accounting information they were provided when they received payments from WCM. Gervasi has alleged that, even upon reviewing the documents in

8

possession of her predecessors in interest, she was unable to determine when the breach occurred. As such, the Court finds that, taking Gervasi's allegations in a light most favorable to her, she has alleged sufficient facts to raise a plausible claim that WCM's alleged breach was inherently undiscoverable prior to May 2007, thus tolling the statute of limitations as to the breach of contract claim until the date she discovered the breach. Taking the facts as alleged by Gervasi as true, it plausible that the discovery rule applies to this claim thus tolling the statute of limitations until a point in 2007 and rendering Gervasi's 2012 Complaint timely filed. Gervasi has therefore alleged sufficient facts to permit her breach of contract claim to proceed based on the discovery rule, and she not estopped from alleging breaches occurring prior to six years before she initiated this suit. In addition, as Gervasi filed this suit on behalf of both herself and the Whiting estate, she is not estopped from alleging injuries suffered by her predecessors in interest occurring prior to when her interest in the estate vested on March 28, 2011.

2. Laches

Where the statute of limitations for a particular claim has not expired, laches may only bar a claim upon a defendant's showing of "gross laches." *In re Pac. E. Corp.*, 223 B.R. 523, 526 (Bankr. M.D. Tenn. 1998) (citing *Sutton v. Davis*, 916 S.W.2d 937, 941 (Tenn. Ct. App. 1995)); *see also Finova Capital Corp. v. Regel*, 195 S.W.3d 656, 660 (Tenn. Ct. App. 2005) ("The doctrine of laches generally applies to actions that are not governed by a statute of limitations, but it may be applied within a statutory limitations period in the case of gross laches."). For claims brought within the statutory limitations period, a defendant may not prevail on a laches defense "based solely on an undue delay in filing the action." *Pac. E. Corp.*, 223 B.R. at 526 (citing *State v. Abernathy*, 17 S.W.2d 17, 20 (Tenn. 1929)). Laches bars claims filed within a statutory limitations period only if there is an "unreasonable and inexcusable delay

9

combined with loss of evidence that prejudices the defendant." *Id.* (citing *Abernathy*, 17 S.W.2d at 20; *Carpenter v. Wright*, 13 S.W.2d 51, 54–55 (Tenn. 1929)). To prevail on a defense of gross laches, a defendant must show "(1) unreasonable and inexcusable delay in filing the action; (2) loss of evidence; and (3) prejudice to the defendant." *Id.*; *see also Sutton*, 916 S.W.2d at 941 (recognizing that, as a general rule, the equitable defense of laches requires the defendant to demonstrate prejudice based on delay).

As the Court has already determined Gervasi has adequately pleaded facts alleging that the discovery rule applies to her claim, WCM may only prevail on a defense of laches at this stage if it can prove gross laches. WCM argues that the Whiting estate's failure to bring this cause of action for over 60 years is inexcusable and prejudicial. (Doc. No. 14 at 7–8.) WCM further argues that it is prejudiced by the fact that all of Gervasi's predecessors in interest in the estate are dead and, therefore, cannot testify to whether they challenged the royalty payments received from WCM. (Doc. No. 19 at 3.) However, as Gervasi points out, for a breach of contract claim, "parol evidence is not admissible to contradict, vary, or alter a written contract, when a written instrument is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegations thereof." *Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888, 892 (Tenn. App. Ct. 2000).

The essence of the dispute between the parties in this case is whether the Renewal Agreement was a valid, enforceable contract. Statements of Whiting's heirs after the Renewal Agreement's execution have no bearing on this issue, which is ultimately a matter of contractual interpretation. *See Guillano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999) ("[To] resolv[e] disputes concerning contract interpretation, [a court's] task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language."). As

10

the Renewal Agreement and the 1936 Contract remain physically intact, the Court finds no prejudice to WCM from the fact that Gervasi's predecessors in interest are not alive to testify that they willingly took payments under the contract. Should Gervasi be able to prove that the breach was inherently undiscoverable until 2007, her predecessors' ignorance of the breach will be immaterial to the claim.

WCM relies on *Solow Building Co. v. Nine West Grp., Inc.*, No. 00 Civ. 7685(DC), 2001 WL 736794 (S.D.N.Y. June 29, 2001), as support for its argument that the Court should dismiss Gervasi's claim based on prejudice from her delay in bringing the action for 60 years. (Doc. No. 14 at 7–8.) As an initial matter, the Court notes that the court in *Solow* was not applying Tennessee law and that the opinion is not controlling precedent; however, more concerning is WCM's mischaracterization of that court's analysis. In *Solow*—a trademark infringement case—the plaintiff admitted it had been aware that the defendants had been improperly using the plaintiff's trademark for twenty years. 2001 WL 736794, at *4. In addition, the defendants in *Solow* argued that they were prejudiced because they had changed their position materially over the course of those twenty years—namely continuously using the trademark on the defendants' products—in such a way that would not have occurred had the plaintiff not delayed in filing suit. *Id.* at *5. By contrast, here, WCM does not argue that the Whiting estate was aware that WCM had breached the Renewal Agreement. Nor does WCM demonstrate that it in anyway changed its position based on the Whiting estate failing to previously file a breach of contract action. As such, *Solow* is easily distinguishable and does not support WCM's argument that the delay in the instant case was prejudicial; further, WCM has failed to produce any evidence of prejudice based on the Whiting estate's delay in bringing this breach of contract claim.

The Court thus finds WCM has not met its burden to establish that laches bars Gervasi's breach of contract claim. Accordingly, the Motion is **DENIED** with respect to Gervasi's breach of contract claim.

*B. Declaratory Judgment*

WCM argues that Gervasi's declaratory judgment claim should be dismissed because (1) Gervasi has alleged the alternative remedy of breach of contract and (2) the Sixth Circuit has held that district courts should not exercise jurisdiction over requests for declaratory judgment where an adequate alternative remedy exists. (Doc. No. 14 at 9–10.) Gervasi responds that a declaratory judgment is proper in this case because the Renewal Agreement and 1936 Contract remain in effect between the parties, and as such a declaratory judgment is needed to determine the parties' future conduct under the contracts. (Doc. No. 17 at 10–12.)

The Declaratory Judgment Act ("DJA") provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2012). The Supreme Court has explained the DJA "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

The Sixth Circuit has articulated five factors for a district court to consider when determining whether to exercise its discretion under the DJA:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

12

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

Here, the Court finds Gervasi has alleged facts sufficient to justify her request for declaratory judgment. The Court finds that the last four factors each weigh in Gervasi's favor. Under the second factor, a declaratory judgment would serve to clarify the legal relations at issue as it would resolve the current dispute over what royalties obligations WCM has under the 1936 Contract and the Renewal Agreement. *See AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004) (determining that situations where "some uncertainty beyond the possibility of litigation exists" weigh in favor of permitting declaratory relief under the second factor, whereas "those where the injury is already complete" weigh against allowing it).

Assessing the third factor, there does not appear to be an issue of "procedural fencing" or a "race for res judicata" here as the party requesting the declaratory judgment is the "natural plaintiff" and there is no dispute as to whether Gervasi brought the case in this Court in order to obtain a favorable forum. *C.f. Scottsdale Ins. Co.*, 513 F.3d at 558 ( "The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" (quoting *AmSouth Bank*, 386 F.3d at 788)).

13

The fourth factor also weighs in favor of allowing Gervasi's declaratory judgment claim. This case does not present the issue of whether this Court is encroaching upon state court jurisdiction over this action because the Court is not aware of any state court proceedings related to this case pending between the above-captioned parties. *C.f. Wilton*, 515 U.S. at 282–83 (instructing district courts to "examine 'the scope of the pending state court proceeding and the nature of defenses open there'") (citation omitted).

The fifth factor similarly fails to support WCM's Motion. The cases cited as authority for WCM's argument that an alternative remedy exists both involve alternative remedies in state court, where related actions were pending at the time the plaintiffs requested declaratory relief in federal court. (Doc. No. 14 at 9–10); *see AmSouth Bank*, 386 F.3d at 791; *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 816 (6th Cir. 2004). Here, the only other remedy sought by Gervasi is her breach of contract claim in the instant case. Accordingly, the Court finds the considerations of whether another court would be in a superior position to resolve the declaratory judgment issue do not apply and accordingly no alternative remedy exists.

Although the Court finds a declaratory judgment may not resolve all controversies in this case, the balance of the factors at this stage of the case weighs in favor of allowing Gervasi to bring the claim. Accordingly, WCM's Motion is **DENIED** with respect to Gervasi's declaratory judgment claim.

IV. CONCLUSION

For the reasons stated above, WCM's Motion is **GRANTED** to the extent that Gervasi's breach of duty of good faith and fair dealing claim and accounting claim are **DISMISSED without prejudice.** WCM's breach of contract and declaratory judgment claims remain intact.

14

The Motion to Continue Trial Date and Deadlines (Doc. No. 33) and the Motion for Status Conference (Doc. No. 34) are **TERMINATED AS MOOT**.

It is so ORDERED.

Entered this the 30 day of January, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT