UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH BUSH GERVASI, individually and on behalf of the Estate of Richard A. Whiting, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| WARNER/CHAPPELL MUSIC, Inc., a division of Warner Music Group Corp., | ) ) ) |
| Defendant. | ) ) |

Case No. 3:12-cv-0627
Judge Aleta A. Trauger

## MEMORANDUM

Pending before the court is a Motion for Leave to Amend the First Amended Complaint filed by the plaintiff (Docket No. 61), to which the defendant has filed a Response in opposition (Docket No. 64), and the plaintiff has filed a Reply (Docket No. 67). For the reasons discussed herein, the motion will be granted in part and denied in part.

## BACKGROUND AND PROCEDURAL HISTORY

On June 20, 2012, the plaintiff, Deborah Bush Gervasi, initiated this breach of contract action against the defendant, Warner/Chappel Music, Inc. ("WCM"), bringing claims on behalf of herself and the estate of her deceased grandfather, Richard A. Whiting (the "Whiting Estate"). (Docket No. 1.) Mr. Whiting was a well-known composer during the early 1900s, whose catalogue of songs includes "On the Good Ship Lollipop," "Hooray for Hollywood," and a number of scores for films and Broadway plays. The claims in this action arise from allegations that WCM, or its predecessors-in-interest,[1] underpaid the Whiting Estate in royalty fees on songs

---

[1] For efficiency, the court will refer in this Memorandum to WCM and all of its predecessors-in-interest alike as "WCM."

1

composed by Mr. Whiting, pursuant to a publication agreement between the Whiting Estate and WCM.

## I. The Amended Complaint

On June 22, 2012, Ms. Gervasi filed the Amended Complaint, which is the current operative pleading. (Docket No. 4.) According to the Amended Complaint, as of May 28, 2011, Ms. Gervasi is the heir to the Whiting Estate, which includes all of Mr. Whiting's intellectual property. The Amended Complaint alleges that, in 1936, Mr. Whiting entered into an agreement with WCM, pursuant to which Mr. Whiting was to render to WCM his exclusive services as a composer of musical compositions for a set period of time, and WCM was to pay him under a set royalty structure for the exploitation of those compositions (the "1936 Agreement"). In 1938, Mr. Whiting passed away and his estate passed to his wife, Eleanore Whiting. On August 27, 1943, Ms. Whiting entered into a publication agreement with WCM, pursuant to which Ms. Whiting transferred her interest in certain of Mr. Whiting's musical compositions to WCM in exchange for royalty payments in the amount of 50% of all of WCM's income on exploitations of those compositions in the United States (the "Renewal Agreement").

According to the Amended Complaint, in May of 2007, Ms. Gervasi discovered paperwork and documents related to the copyrights in Mr. Whiting's Estate that revealed that WCM had been paying the Whiting Estate a lower percentage of royalties than the 50% required on thirteen of the compositions covered by the Renewal Agreement. These thirteen compositions are listed in an exhibit to the Amended Complaint. The Amended Complaint does not specify when this alleged breach began, nor when the Whiting estate was first in possession of the documents Ms. Gervasi reviewed in 2007 that alerted her to the potential breach.

The Amended Complaint alleges that, beginning in May of 2007, Ms. Gervasi sought answers from WCM about the royalties on the thirteen compositions identified in the Amended Complaint. Despite a number of communications, WCM did not offer any explanation until March of 2010, when, according to the Amended Complaint, WCM represented to Ms. Gervasi that the royalty payments on these compositions were not subject to the Renewal Agreement terms but to lower royalty rates provided in the 1936 Agreement. Because the thirteen compositions are expressly listed in the Renewal Agreement, Ms. Gervasi continued to demand additional explanation from WCM but received no further response. The factual dispute between the parties as to whether the Renewal Agreement governs the thirteen compositions identified in the Amended Complaint remains at the heart of this action. WCM claims that those thirteen compositions were listed in the Renewal Agreement in error, as they were already owned by WCM (rather than the Whiting Estate) pursuant to the 1936 Agreement and, therefore, rights to those compositions could not have been transferred to WCM from Ms. Whiting in 1943.

The Amended Complaint brings causes of action for breach of contract and breach of the duty of good faith and fair dealing. The Amended Complaint seeks compensatory and punitive damages as well as an accounting and a declaratory judgment that WCM is obligated to pay the Whiting Estate royalties in the amount of 50% of income from exploitations of the thirteen listed compositions.

## II. **The Prior Motion to Dismiss**

On December 3, 2012, WCM filed a Motion to Dismiss for failure to state a claim under Rule 12(b)(6), along with a Memorandum in support. (Docket Nos. 13, 14.) In this motion, WCM argued that Ms. Gervasi's claims were barred by the statute of limitations, or, alternatively, that they should not be allowed to proceed under the equitable doctrine of laches,

because the Whiting Estate had accepted royalty payments of less than 50% on the thirteen compositions in question for decades before the action was filed. WCM likewise argued that the discovery rule should not apply to toll the limitations period because the alleged breach had been discoverable by the Whiting Estate for the same amount of time. On December 27, 2012, Ms. Gervasi filed a Response to the Motion to Dismiss, arguing that the statute of limitations did not bar her claims because, even though the Renewal Agreement had been in effect for decades, it was not yet clear when the breach began. (Docket No. 17.) Ms. Gervasi further argued that, regardless of when the breach began, pursuant to the discovery rule, the limitations period did not start running until 2010, when WCM admitted to Ms. Gervasi that it had paid royalties of less than 50% (and in the amount indicated by the 1936 Agreement) on the thirteen compositions. According to Ms. Gervasi, prior to 2010, the breach was not entirely clear to her, despite her diligent efforts to understand the royalty payments and to receive an explanation from WCM for the apparent discrepancies she noted in the documents she reviewed. Ms. Gervasi also argued that the laches defense was premature at the motion to dismiss phase, when the factual record had not yet been developed. On January 14, 2013, WCM filed a Reply. (Docket No. 19.)

The parties agreed, for purposes of the Motion to Dismiss only, that Tennessee law applied, though WCM stated in its briefing that it reserved the right to later assert that California law actually governs the agreements between the parties. In her Response, Ms. Gervasi also conceded to the dismissal of her claims for breach of the implied covenant of good faith and fair dealing and for an accounting.

On January 30, 2014, the court issued a Memorandum and Order denying WCM's Motion to Dismiss with respect to the remaining claims. (Docket No. 35.) The court first held

that, under Tennessee law, the six-year statute of limitations on the breach of contract claim began running when WCM first allegedly breached the Renewal Agreement, or announced its intention to do so. The court specifically held that, under Tennessee law, the limitations period did not begin anew each time a new royalty payment was issued that allegedly breached the terms of the Renewal Agreement. Accordingly, the court held that Ms. Gervasi would have to show that either the first breach of the Renewal Agreement occurred no earlier than 2006 or that the discovery rule applies, in order for her breach of contract claim to survive, even with respect to damages arising from any alleged underpayments made within the six years prior to her filing of this action. The court then held that, while the issue of whether the discovery rule will ultimately apply could not be decided until the factual record was more fully developed, Ms. Gervasi had sufficiently pled facts that, when viewed in the light most favorable to her, would support a claim that the discovery rule tolls the statute of limitations in this instance.

Specifically, the court found that, on the face of the allegations in the Amended Complaint, the claims were discoverable at least as early as 2007. The court rejected Ms. Gervasi's assertion that the limitations period did not begin running until 2010, when she knew all of the facts to support her legal theory of the case. Because 2007 was within the six years prior to Ms. Gervasi's filing of this action, the court held that the claims could proceed. The court noted, however, that, once the record was more fully developed, Ms. Gervasi would ultimately have to prove that the breach was not reasonably discoverable by the Whiting Estate at any time prior to 2006 in order to prevail.[2] The court did not reach the laches defense, holding

---

[2] The court found that it was not clear from the Amended Complaint whether the information Ms. Gervasi uncovered in 2007, which she alleged revealed the underpayment of royalties, was only first available to the Whiting Estate in 2007, or if that accounting information was available in older royalty statements from WCM but 2007 was simply the first time Ms. Gervasi – or anyone with rights to the Whiting Estate – exercised the diligence to review the available

5

that this analysis was premature when it had not yet been determined whether the claims were barred by the statute of limitations. The court stated, however, that, if Ms. Gervasi were able to prove that the discovery rule applies because the alleged breach was not reasonably discoverable by the Whiting Estate prior to 2006, the laches defense would likely fail for that same reason.

On February 13, 2014, WCM filed an Answer to the Amended Complaint. (Docket No. 36.)

### III. The Motion to Amend and the Proposed Second Amended Complaint

Since the Answer was filed, the parties have filed several joint motions to extend the pre-trial deadlines and have participated in one jointly requested judicial settlement conference, which was unsuccessful. On March 17, 2016, at the joint request of the parties, the court suspended all deadlines, including the close of discovery which had been previously scheduled for April 1, 2016, and continued the trial, in light of Ms. Gervasi's stated intent to file the pending Motion to Amend. (Docket No. 59.)

On April 11, 2016, Ms. Gervasi filed the Motion for Leave to Amend the First Amended Complaint, attaching a proposed Second Amended Complaint (the "PSAC") and exhibits thereto (Docket No. 61) along with a Memorandum in support (Docket No. 62). Ms. Gervasi now seeks to amend her pleadings based on information that she alleges she has learned for the first time during the discovery process. The PSAC restates most of the factual allegations in the prior Amended Complaint but adds the additional allegations and changes that are discussed more fully below. (Docket No. 61-1.) The PSAC also now asserts that California law, rather than Tennessee law, applies to this action. Finally, the PSAC asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the California

---

documents and notice the potential breach. At the motion to dismiss phase, viewing the facts in the light most favorable Ms. Gervasi, the court, therefore, allowed the claims to proceed.

Business and Professions Code, and seeks compensatory damages as well and injunctive and declaratory relief.

On April 29, 2016, WCM filed a Response in opposition to the Motion to Amend, arguing that the amendment would be futile because the new claims do not relate back to the Amended Complaint and are barred by California's Statute of Limitations. (Docket No. 64.) On June 1, 2016, Ms. Gervasi filed a Reply. (Docket No. 67.)

**A. New Allegations in the PSAC About Additional Compositions and Discovery of the Alleged Breach**

The PSAC alleges underpayment of royalties by WCM to the Whiting Estate not only for the thirteen compositions identified in the Amended Complaint, but for all compositions covered by the Renewal Agreement. It is not entirely clear from the PSAC why these compositions were not included in the prior Amended Complaint, but Ms. Gervasi's Memorandum in support of her Motion to Amend clarifies that she discovered the additional underpayments through "a lengthy and painstaking analysis of more than 30 years of royalty statements." (Docket No. 62, p 2.) In the PSAC, Ms. Gervasi also changes her allegations about her initial discovery of the alleged underpayments of royalties giving rise to this action. The current Amended Complaint states that, in 2007 Ms. Gervasi reviewed documents and "discovered [WCM] had been paying [Ms. Gervasi's] predecessors at a lower percentage rate for publishing income received from the [thirteen compositions at issue] instead of the required fifty percent (50%) of publishing income under the Renewal Agreement." (Docket No. 4, ¶ 16.) The PSAC, to the contrary, alleges that, starting in late 2006, Ms. Gervasi began reviewing royalty statements received by the Whiting Estate through June 30, 2006 and uncovered discrepancies therein but that "the royalty statements contained no explanation of how the royalty for each Composition was divided or

7

how the percentage figures were derived; consequently, there was no way to determine from the face of the statements what percentage was due the Whiting Estate or whether the amount due the estate had been correctly paid." (Docket No. 61-1, ¶ 17.) The PSAC then reiterates, as alleged in the Amended Complaint, that, as of 2007, Ms. Gervasi began to send requests for explanation of the royalty statements to WCM but did not receive satisfactory answers. According to the PSAC, WCM responded to Ms. Gervasi in October of 2007, informing her that, pursuant to the 1936 Agreement, it owned the compositions by Mr. Whiting for which she had questioned the royalty payments, but WCM never informed her of the existence of the Renewal Agreement.

The PSAC further alleges that Ms. Gervasi first saw the Renewal Agreement in September of 2009. The PSAC explains, however, that Ms. Gervasi obtained the Renewal Agreement at that time from the archives of the U.S. Copyright Office. The PSAC then reiterates that, in 2010, WCM again informed Ms. Gervasi that it had paid the Whiting Estate royalties at a rate of 33.3% pursuant to the 1936 Agreement (though the PSAC does not clarify whether this response pertained solely to the thirteen compositions identified in the Amended Complaint or to other compositions in the Renewal Agreement as well). Finally, the PSAC states that WCM's "failure to disclose the existence of the Renewal Agreement, its failure to disclose that it was not paying Plaintiff and Plaintiff's predecessors at the 50 percent rate required by the Renewal Agreement, and its active concealment of this fact by providing confusing and misleading royalty statements, by failing to respond to reasonable inquiries, and by falsely representing the nature of its obligations to Plaintiff and the Whiting Estate prevented Plaintiff and her predecessors from discovering the breach until March 2010, when Defendant

expressly admitted it had not been paying royalties at the rate specified in the Renewal Agreement."

### B. Allegations in the PSAC Regarding WCM's Foreign Exploitations of Whiting Compositions

The Second Amended Complaint also alleges that the Renewal Agreement was amended twice subsequent to its execution, the first time later in the same year it was entered and the second time in 1953. According to the PSAC, these amendments provided that WMC would pay the Whiting Estate royalties in the amount of 50% of profits made from foreign, as well as domestic, exploitations of the compositions covered by the Renewal Agreement. The PSAC then alleges that WCM not only failed to pay the 50% in royalties but also took other illegal measures to lower the royalty amounts owed to the Whiting Estate on foreign exploitations. Specifically, the PSAC alleges that WCM has entered into improper fee arrangements with its foreign affiliates who sub-license the compositions for exploitation abroad. According to the PSAC, WCM wholly owns these entities (or, alternatively, they are alter egos of WCM), and WCM pays them higher collection fees for gathering royalties on foreign exploitations than the standard fee amount that would be charged by other sub-licensors. Moreover, the PSAC alleges that WCM's foreign affiliates themselves charge lower fees to other unaffiliated publishers for the same services. According to the PSAC, the fee arrangement between WCM and its foreign affiliates is designed so as to disproportionately allocate the royalties earned on foreign exploitations of the Whiting compositions to WCM's affiliates rather than to the Whiting Estate. It is not clear from the PSAC how long these allegedly improper transactions have been occurring between WCM and its foreign affiliates, nor when such information was reasonably available to the Whiting Estate. Ms. Gervasi appears to allege, reading the PSAC in the light

9

most favorable to her, that this information was concealed from the Whiting Estate and could not have reasonably been known until certain documents were exchanged during discovery in this litigation.

## **ANALYSIS**

A motion for leave to amend a pleading under Rule 15(a)(2) should be freely granted where justice so requires. *Foman v. Davis*, 371 U.S. 178, 230 (1962). However, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman,* 371 U.S. at 182). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)).

WCM argues that the Motion to Amend should be denied because the claims added in the PSAC – for underpayment of royalties on additional compositions and on foreign exploitations – are barred by California's four-year statute of limitations, and neither relate back to claims in the Amended Complaint nor are saved by the discovery rule. At the very least, WCM argues, these new claims should be limited to damages arising within the four years prior to the PSAC being filed. In fact, WCM does not dispute Ms. Gervasi's assertion that – unlike the court found in the prior Motion to Dismiss with respect to Tennessee law – under California law, contracts for future royalty payments *are* divisible, such that the limitation period begins anew for each breaching underpayment rather than beginning just once upon the first underpayment. *See Aryeh*

10

*v. Canon Bus. Sols, Inc.*, 55 Cal. 4th 1185, 1196 (Cal. 2013) (holding that this "accrual rule" applies equally to common law claims and claims under the California Business and Professions Code). The parties further agree, correctly, that the statute of limitations for the claims in this action is four years under California law. *See* Cal. Code Civ. Proc. § 337 (providing a four-year limitations period for claims based on the breach of a written contract); Cal. Code Bus. & Prof. § 17208 (providing a four-year limitations period for claims brought under the California Business and Professions Code). Accordingly, the court finds that all claims in the PSAC may proceed at least with respect to any alleged underpayments of royalties that took place during the four years prior to Ms. Gervasi's filing of the Motion to Amend. The court now turns to the question of whether Ms. Gervasi may proceed with claims arising from conduct that took place prior to that time, based on either the doctrine of relation back or the discovery rule.

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment relates back when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Ms. Gervasi argues that the new claims in the PSAC relate back to the claims asserted in the Amended Complaint because they all arise from breaches of the same Renewal Agreement and that WCM should have been on notice from the Amended Complaint that any breaches of the Renewal Agreement would potentially be part of this action. WCM argues that the claims do not relate back because they are about different royalty payments for different exploitations. The court agrees with WCM and finds that the doctrine of relation back is not applicable here. Even though the claims arise from alleged breaches of the same agreement, they arise from separate royalty payment transactions or from wholly separate conduct with respect to WCM's dealings with its foreign affiliates. The fact that Ms. Gervasi identified the Renewal Agreement in her earlier pleadings did not put WCM on

11

notice that this action involves any transactions that allegedly breached that agreement. In fact, by specifically identifying the domestic exploitations of thirteen enumerated compositions, Ms. Gervasi arguably indicated that it was not her intent to challenge any other royalty payments made under the Renewal Agreement. The cases cited by the plaintiff to support relation back in this instance are readily distinguishable. *See Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 249-50 (6th Cir. 2000) (the amendment, held to relate back, arose from the same toxic exposure and resulting illness described in the prior pleadings but clarified that the toxin was benzene when the prior pleadings made a vague reference to "hazardous substances"); *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973) (the claims added by amendment, and held to relate back, arose from the same fatal explosion of a gas heater but added an additional theory of liability).

Finally, the court turns to whether the discovery rule is applicable to toll the statute of limitations. Because the PSAC reframes all the claims in this action to be brought under California law rather than Tennessee law, and also specifically amends the allegations related to the discovery of the claims, the court analyzes anew whether the discovery rule applies to any of Ms. Gervasi's claims, including those that were raised in the prior pleadings. Under California's delayed discovery rule, "a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (Cal. 2005).

Ms. Gervasi argues that she did not discover the underpayments until 2010 with respect to the original thirteen compositions and not until even later with respect to the additional

compositions and the foreign exploitations.  Ms. Gervasi admits in the PSAC, however, that as early as 2007, WCM first informed her that it was paying royalties in an amount of 33.3% as provided in the 1936 Agreement.  While Ms. Gervasi may not have known at the time that some of those compositions for which 33.3% was being paid were listed in the Renewal Agreement, or covered by the amendments to the Renewal Agreement, these facts were available to Ms. Gervasi (as well as to her predecessor owners of the Whiting Estate) with reasonable investigation.  Ms. Gervasi hinges her argument that the discovery rule should apply on the fact that WCM did not affirmatively inform her of the existence of the Renewal Agreement and expressed its position that the royalty payments she questioned were subject to the 1936 Agreement.  All the while, however, the Renewal Agreement and its amendments were available to Ms. Gervasi because 1) as she admits in the PSAC, the Renewal Agreement was publicly available through the U.S. Copyright Office, and 2) the Renewal Agreement and its amendments were executed by owners of the Whiting Estate, meaning they should have been in the estate's knowledge and possession long before the time Ms. Gervasi personally discovered them.

Moreover, Ms. Gervasi admits that she identified even the additional underpayments alleged for the first time in the PSAC by her review of thirty years' worth of royalty statements.  Certainly those statements would have been in the possession of the Whiting Estate all along.  Finally, Ms. Gervasi's argument that the limitations period should be tolled because the claims were not understandable by a reasonable person from the information she could access is belied by her own assertions that once she conducted the review, however "painstaking," of the Renewal Agreement and the royalty payments, she did, in fact, uncover the basis for her claims.  For these reasons, the court finds that the discovery rule does not apply to claims that WCM

breached the Renewal Agreement by making royalty payments of less than 50% in breach of the Renewal Agreement.

With respect to Ms. Gervasi's claims that WCM breached the Renewal Agreement and the covenant of good faith and fair dealing, and otherwise violated California's Business and Professions Code based on its dealings with its foreign affiliates, however, the court finds that the discovery rule may apply. It is not clear from the PSAC how long these alleged transactions have been taking place, but to the extent that it is longer than four years prior to Ms. Gervasi's filing of her Motion to Amend, Ms. Gervasi may be able to show that the discovery rule applies to toll that limitations period. At this time, when the factual record has not yet been fully developed, the court cannot make any final determinations as to whether the discovery rule would apply, but, viewing the PSAC in the light most favorable to Ms. Gervasi, she has sufficiently alleged that this transaction was not reasonably discoverable by the Whiting Estate until discovery in this action.

In sum, Ms. Whiting's claims for underpayment of royalty fees under the Renewal Agreement may proceed with respect to payments made within four years prior to her filing of this action (or payments made after June 20, 2008) for the thirteen compositions identified in the Amended Complaint, and may proceed with respect to royalty payments made within four years prior to her filing of the Motion to Amend (or payments made after April 11, 2012) for all other compositions. Ms. Whiting's claims that arise from royalty payments of less 50% made before these times are barred by the statute of limitations. With respect to claims arising from allegations that the payments were lowered by WCM's transactions with its foreign affiliates, at this time these claims may proceed without any temporal limits, though Ms. Gervasi will have to

prove that the discovery rule applies in order to be successful on these claims for any damages reflected in royalty payments made prior to April 11, 2012.

## **CONCLUSION**

For the foregoing reasons, Ms. Gervasi's Motion to Amend will be granted in part and denied in part, and she will be permitted to file a revised Second Amended Complaint in keeping with this Memorandum

An appropriate Order will enter.

ALETA A. TRAUGER
United States District Judge