# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH BUSH GERVASI, Individually and on behalf of the ESTATE OF RICHARD A. WHITING, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 3:12-cv-0627 Judge Aleta A. Trauger |
| WARNER/CHAPPEL MUSIC, INC. A DIVISION OF WARNER MUSIC GROUP CORP., ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Warner/Chappel Music, Inc. ("WCM") has filed a Motion to Dismiss for Lack of Jurisdiction (Docket No. 84), to which Deborah Bush Gervasi has filed a Response (Docket No. 87), and WCM has filed a Reply (Docket No. 89). Ms. Gervasi then filed a Motion for Leave to File Surreply and to File a Third Amended Complaint (Docket No. 91), to which WCM has filed a Response (Docket No. 94), and Ms. Gervasi has filed a Reply (Docket No. 97). For the reasons set out herein, Ms. Gervasi's motion will be granted in part and denied in part, and WCM's motion will be denied as moot.

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

Richard A. Whiting was an early 20th-century songwriter, known for such compositions as "Oh the Good Ship Lollipop" and "Hooray for Hollywood." (Docket No. 97-1 ¶ 7.) In 1936, Mr. Whiting entered into a music publishing agreement with Warner Bros. Pictures. (*Id.* ¶ 11.) In

---

[1] The underlying facts of the case are taken primarily from Ms. Gervasi's second proposed Third Amended Complaint. (Docket No. 97-1.) Except where otherwise noted, the facts are accepted as true for purposes of the Motion to Amend.

1938, Mr. Whiting died, leaving his intellectual property to his wife, Eleanore, and his daughters, Barbara and Margaret. (*Id.* ¶ 12.) In 1943, Eleanore Whiting entered into an agreement with Music Publishers Holding Corporation ("MPHC"), whereby she transferred her interest in the renewal copyrights of some of Mr. Whiting's compositions to the company in exchange for 50% of the domestic licensing receipts for the compositions. (*Id.* ¶¶ 13–14.) Shortly thereafter, the parties amended the agreement to grant Ms. Whiting a share of international licensing at the same rates as those for domestic licensing under Mr. Whiting's original publishing contracts, including the 1936 agreement. (*Id.* ¶ 15.) In 1953, the parties amended the agreement again, to increase Ms. Whiting's international licensing share to 50%. (*Id.* ¶ 16.) Eleanore Whiting died in 1981, leaving her rights to Margaret; Margaret died in 2011, leaving her rights to her daughter, Ms. Gervasi. (*Id.* ¶ 30.) Ms. Gervasi lived in Tennessee when this case was initiated and now lives in New York, and probate documents state that her mother Margaret was living in New York at the time of her death. (*Id.* ¶ 1; Docket No. 91-3 at 102.) WCM, which is the successor-in-interest of MPHC and Warner Bros. Pictures, is based in California. (Docket No. 97-1 ¶ 2.)

In December 2006, Ms. Gervasi, while caring for her ailing mother, reviewed the records of licensing payments that her mother had received from WCM and noticed payment variations that she was unable to explain. (*Id.* ¶¶ 18–19.) Ms. Gervasi and her mother, after researching the matter, came to believe that WCM had been underpaying the royalties. They informed WCM that they believed it was underpaying them, but they mostly received either silence or resistance to their complaints. After her mother's death, Ms. Gervasi, as the heir to her mother's royalty rights, continued correspondence with WCM in an attempt to recoup the underpayments, but WCM took the position that the royalties had been calculated correctly because the relevant

2

compositions were governed by the 1936 agreement, not any subsequent agreements. (*Id.* ¶¶ 23–34.)

On June 20, 2012, Ms. Gervasi filed her Complaint in this case. (Docket No. 1.) She filed a First Amended Complaint two days later. (Docket No. 4.) The First Amended Complaint's caption indicated that Ms. Gervasi was suing "individually and on behalf of the estate of Richard A. Whiting." (*Id.* at 1.) The Complaint referred to Ms. Gervasi as "the legal representative of the estate of Richard A. Whiting" and asserted that, in her capacity as representative of the estate, Ms. Gervasi was "obligated to account to and pay Plaintiff royalties due to the estate of Richard A. Whiting." (*Id.* ¶ 36.) The Complaint, which pleaded claims for breach of contract, breach of the duty of good faith and fair dealing, accounting, and declaratory judgment, cited only one basis for this court's subject matter jurisdiction—diversity of the parties under 28 U.S.C. § 1332. (*Id.* ¶¶ 3, 34–57.)

On December 3, 2012, WCM filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 13.) Among the arguments made by WCM was that Ms. Gervasi cannot assert claims for damages related to royalties due prior to her inheritance of her mother's royalty rights on March 28, 2011. (Docket No. 14 at 8.) Ms. Gervasi responded that the date of her personal inheritance did not limit her period of recovery because her "claims [were] brought on behalf of both herself and the estate and therefore have no such time limitation." (Docket No. 17 at 9 n.2.) On January 30, 2014, Judge John T. Nixon granted the Motion to Dismiss in part and denied it in part.[2] (Docket No. 35.) Specifically, Judge Nixon dismissed Ms. Gervasi's good faith and fair dealing and accounting claims without prejudice but left her other claims intact. (*Id.* at 14.) Regarding Ms. Gervasi's claims for damages incurred prior to her mother's death, the court

---

[2] The case was reassigned to this judge upon Judge Nixon's retirement on December 31, 2016. (Docket No. 68.)

3

wrote: "[A]s Gervasi filed this suit on behalf of both herself and the Whiting estate, she is not estopped from alleging injuries suffered by her predecessors in interest occurring prior to when her interest in the estate vested on March 28, 2011." (*Id.* at 9.)

Litigation continued, and, on April 11, 2016, Ms. Gervasi filed a Motion for Leave to Amend the First Amended Complaint. (Docket No. 61.) Specifically, Ms. Gervasi sought to include additional facts unearthed in discovery, to reframe some of the facts related to her initial uncovering of the alleged underpayments, and to recast her claims as governed by California, rather than Tennessee, law. (Docket No. 62 at 1–2.) Her proposed Second Amended Complaint still purported to be filed by Ms. Gervasi both in her individual capacity and on behalf of Richard A. Whiting's estate. (Docket No. 61-1 at 1, ¶¶ 28, 49.) On January 30, 2017, this court granted Ms. Gervasi leave to amend in part, holding that some of her claims for damages prior to either June 20, 2008 or April 11, 2012, depending on the composition, were time-barred. (Docket No. 70 at 14.)

Again, litigation continued. On October 16, 2017, WCM filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction. (Docket No. 84.) For the first time, WCM noted that, at the time of his death, Richard A. Whiting was, like WCM, a citizen of California for jurisdictional purposes. (*Id.* at 1.) Pursuant to 28 U.S.C. § 1332(c)(2), "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." A federal court can exercise diversity jurisdiction "only if each of the plaintiffs comes from a different State from each of the defendants." *Evanston Ins. Co. v. Hous. Auth. of Somerset*, 867 F.3d 653, 656 (6th Cir. 2017) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553–54 (2005); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). WCM's hypothetical diversity of

4

citizenship with Ms. Gervasi as an individual, therefore, cannot remedy its lack of diversity with Ms. Gervasi as the representative of a California estate.

In Response, Ms. Gervasi argued that, despite her several prior statements to the contrary, she is not the representative of Richard A. Whiting's estate in any formal sense, but only in the sense that she is suing to vindicate the rights of his heirs:

> Mr. Whiting's estate was closed decades ago when his wife and children inherited the copyrights at issue in this case. Ms. Gervasi, who was not even born when her grandfather died, was never the legal representative of his estate and never intended to sue in that capacity, which she obviously could not have done. Her intent in referring to her grandfather's estate was to identify the source of her copyrights and the fact that she was suing not only individually, as one of her grandfather's heirs, but also on behalf of her cousin—her grandfather's other heir and co-owner of the copyrights.

(Docket No. 87 at 1–2.) While WCM's Motion to Dismiss was pending, Ms. Gervasi filed a Motion for Leave to File Surreply and to File a Third Amended Complaint, in which she seeks leave to amend her complaint to clarify that she is not seeking to assert any claims as a formal legal representative of the Whiting estate. (Docket No. 91.) Ms. Gervasi also seeks, for the first time, to assert federal question jurisdiction. (Docket No. 91-4 ¶ 4.)

## II. LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun*

*Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

## III. ANALYSIS

### A. Futility of Amendment: Diversity Jurisdiction

Ms. Gervasi does not appear to dispute either the factual or the legal basis for WCM's contention that a formal representative of the Richard A. Whiting estate would be considered a citizen of California for purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(2). *See McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 597 n.3 (6th Cir. 2002) ("[I]n her capacity as legal representative of the estate of her late son, a Tennessee resident, McCurry would also be deemed a Tennessee resident."). Rather, Ms. Gervasi argues that, despite her multiple earlier claims to the contrary, she is not and has never been a representative of the estate in the sense contemplated by the statute, for the simple reason that Richard A. Whiting's estate ceased to exist as a cognizable legal entity before this lawsuit was filed.

WCM does not take issue with the general proposition that, once an estate has been fully and finally closed, it ceases to exist as a legal entity and, therefore, cannot have a formal legal representative, as the term is used in ordinary probate law. *See Perry v. Clear Channel Broad.*, No. 2:07cv134-KS-MTP, 2008 WL 190573, at *5 (S.D. Miss. Jan. 18, 2008) ("After it was duly administered, the estate was closed on September 9, 2001. All assets have been distributed, and the estate has ceased to exist as a legal entity." (citations omitted)); *Keach v. U.S. Trust Co.*, 256 F. Supp. 2d 814, 818 (C.D. Ill. 2003) ("[A]s the Estate of Thomas S. Foster is closed, and Mrs. Foster has been discharged from her capacity as the Executrix of that Estate, she . . . can no longer be sued in this capacity absent a reopening of the Estate . . . . Mrs. Foster no longer has

legal competence with respect to the Estate because her representative capacity no longer exists."); *Young v. Moore*, 127 F. Supp. 265, 269 (E.D. Mich. 1954) ("It is a well recognized principle of law that a decedent's estate continues to exist from the time of death until closed by court order. As a corollary[,] after an order has closed the estate, it is non-existent." (citation omitted)); *Rittenhouse v. Superior Court*, 235 Cal. App. 3d 1584, 1588 (Cal. Ct. App. 1991) ("[A]fter the estate is closed[,] there is no longer a personal representative.").

Rather, WCM raises four arguments that would render Ms. Gervasi's proposed amendments futile in establishing federal diversity jurisdiction: (1) her proposed Third Amended Complaint does not, in fact, remedy the jurisdictional defect, because it still raises a claim on behalf of her grandfather's estate; (2) her earlier claims of having been a representative of the estate should be treated as binding judicial admissions; (3) she has not established a chain of ownership that would grant her any royalty rights in her personal capacity; and (4) Ms. Gervasi, as Mr. Whiting's successor-in-interest, should be treated no differently than a representative of his estate.

WCM is correct that Ms. Gervasi's proposed amendments, so far, do not fully remedy her jurisdictional problem. Ms. Gervasi has filed two proposed Third Amended Complaints (Docket Nos. 91-4 & 97-1), each one closer to the mark but neither quite there yet. Initially, Ms. Gervasi claimed that her first proposed Third Amended Complaint "set[] forth how she was not even born when the Estate was closed and has never been a representative of the Estate." (Docket No. 91 at 2.) The caption of the first proposed Third Amended Complaint, however, still states that it was filed by Ms. Gervasi both in her individual capacity and on behalf of the estate, and the text of the complaint still claims that Ms. Gervasi "became the legal representative of the Whiting Estate" in 2011 and refers to Ms. Gervasi in the present tense, as "the legal representative of the

estate of Richard A. Whiting." (Docket No. 91-4 at 1, ¶¶ 30, 55.) The result is that Ms. Gervasi sought to file a complaint containing claims that she, in a contemporaneously filed motion, admitted to be false. Presumably in recognition of that error, Ms. Gervasi, as part of her Reply, filed a revised proposed Third Amended Complaint removing the textual claims that she was ever a representative of the estate. (Docket No. 97-1.) Still, however, the caption of the case claims that Ms. Gervasi is suing "on behalf of the estate of Richard A. Whiting." (*Id.* at 1.) Still, it refers to royalties due long after the estate was allegedly closed as "due [to] the Whiting Estate," claims that Ms. Gervasi's correspondence in 2008 was "on behalf of . . . the Whiting Estate," and otherwise refers to the estate in ways suggesting that it continued to exist well beyond the months and years following Mr. Whiting's death. (*Id.* ¶¶ 19, 26, 28, 55.)

After two attempts, Ms. Gervasi has yet to attain consistency on the fundamental questions of whether she wishes for the court to consider Richard A. Whiting's estate to be an extant legal entity and whether she is suing on behalf of such an entity. Ms. Gervasi's claim that she merely intends to assert claims on behalf of her cousin does little to explain this discrepancy. If she wishes to sue on behalf of her cousin, she should say she is suing on behalf of her cousin and explain why she believes she has the right and authority to do so. There is no reason to use the long-closed estate as a stand-in for an identifiable human being.

The defects in the proposed Third Amended Complaint(s), however, are not reasons that Ms. Gervasi should not be allowed to amend the Complaint at all. *Cf. Bryant v. Turney*, No. 5:11-CV-00128-TBR, 2012 WL 4471589, at *4 (W.D. Ky. Sept. 26, 2012) (exercising diversity jurisdiction where beneficiary of non-diverse estate mistakenly sued under caption indicating that he was the representative of the estate). It would be fairly simple, by changing the caption and striking or rephrasing a few snippets of language, to provide a Complaint that would actually

say what Ms. Gervasi's briefing claims she wishes to say. The court will, therefore, consider whether Ms. Gervasi should be granted leave to file a Third Amended Complaint in conformance with the position taken in her Motion.

WCM argues next that, even if Ms. Gervasi is correct that she never was and never could have been a representative of the Richard A. Whiting estate, her earlier claims to the contrary should be treated as binding judicial admissions that she cannot repudiate. "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Factual assertions in pleadings . . . , *unless amended*, are considered judicial admissions conclusively binding on the party who made them." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)) (emphasis added). A properly drafted Third Amended Complaint would, therefore, save Ms. Gervasi from being bound by her earlier Complaints' mistaken claims that she represented the estate, but it would not necessarily negate similar statements in other pleadings, including in her opposition to WCM's unsuccessful Motion to Dismiss.

The particular circumstances of this case, however, leave the court hesitant to treat those statements as binding judicial admissions. The Sixth Circuit has observed that "judicial admissions generally arise only from deliberate voluntar[y] waivers that expressly concede . . . an alleged fact." *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) (quoting *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975)). When Ms. Gervasi made her earlier statements regarding the estate, neither party had identified the currently pending jurisdictional issue, and Ms. Gervasi was, therefore, presumably not yet aware of the importance of distinguishing between the estate itself and the mere aggregate rights of its heirs. Her focus

was on identifying the rights she wished to assert, not in characterizing the formal details of the route those rights took to land in her hands. Once the jurisdictional challenge was raised, Ms. Gervasi promptly sought to clarify what she meant by her references to the estate—namely, that she meant only that she was a successor-in-interest, not that the estate was still an open, continuing legal entity. It is something of a strain, then, to construe Ms. Gervasi as having conceded anything. At most, she used the wrong language and sought to correct it once the significance thereof became clear.

The Sixth Circuit has also expressed reluctance to treat "statements deal[ing] with opinions and legal conclusions" as judicial admissions. *MacDonald*, 110 F.3d at 341. Whether an estate exists and whether a person holds the status of representative for jurisdictional purposes are fundamentally legal questions. WCM has not identified any reason why a litigant cannot, at this stage, change her position on a legal question ancillary to her claims—just as, for example, Ms. Gervasi has already done with regard to choice of law. (*See* Docket No. 62 at 2.) The court, accordingly, will not consider Ms. Gervasi bound by her earlier claims about the estate.

Next, WCM argues, in its Motion to Dismiss, that, if Ms. Gervasi is indeed suing only in her individual capacity, then she lacks standing, because she has not produced evidence sufficient to show that she actually possesses an interest in the rights to the ongoing royalties from Mr. Whiting's compositions. In response, Ms. Gervasi has produced probate records that, she argues, are sufficient to establish her interest in the royalties and confer standing. (Docket No. 91-3.) The constitutional standing inquiry is "forgiving" and requires only a "colorable claim on the property" at issue. *United States v. Howard*, No. 12CR95-4, 2017 WL 2955758, at *3 (S.D. Ohio July 11, 2017) (quoting *De Saro v. United States*, 173 F. App'x 760, 764 (11th Cir. 2006)). Requiring more would conflate the issue of standing with the issue of whether a plaintiff

should prevail on the merits. The facts and materials Ms. Gervasi has identified are sufficient to create a colorable interest upon which standing can be premised. Amending her Complaint to assert only a claim on her own behalf would not be futile on that ground.

Finally, WCM argues that, even if Ms. Gervasi was never a formal representative of the estate, she is the equivalent of a representative because she is suing as a successor-in-interest to the estate. Under California law, a successor-in-interest may take up a decedent's cause of action if no representative is available:

> A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to Chapter 1 (commencing with Section 7000) of Part 1 of Division 7 of the Probate Code, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest.

Cal. Civ. Proc. Code § 377.30. That statute, though, governs surviving causes of action of the decedent himself, not causes of action merely based on rights that once belonged to the decedent. Mr. Whiting died before most of the agreements and transactions at issue here had taken place, and WCM has identified nothing about Ms. Gervasi's theory of the case that would suggest that she seeks to recover for causes of action that accrued prior to Mr. Whiting's death. Indeed, Ms. Gervasi's claimed royalty rates specifically hinge on agreements signed when Mr. Whiting was no longer alive. As long as an appropriately drafted Third Amended Complaint does not seek to recover on behalf of Mr. Whiting himself, for causes of action that accrued during his life, Ms. Gervasi should face no obstacle under Cal. Civ. Proc. Code § 377.30.

WCM argues, in essence, that the successor-in-interest to inherited property should be treated as a citizen of the state of the original decedent for any and all causes of action arising out of that property. In support of such a contention, it cites *Shuler v. EmeriCare Inc.*, No. LA CV17-02684 JAK (Ex), 2017 WL 3193647 (C.D. Cal. July 27, 2017), in which the heir of a

recently deceased woman sued the operators of the decedent's skilled nursing facility for various causes of action related to her care, including elder abuse and violation of the California Patient's Bill of Rights. *Id.* at *1–2. At most, though, that case stands for the proposition that the domicile of the decedent controls in a case where the heir is asserting the decedent's own causes of action. *Id.* at *3. It would be quite another thing to conclude that a decedent's domicile controls in perpetuity for any suit based on property rights passed down to his heirs, his heirs' heirs', and—in Ms. Gervasi's case—his heirs' heirs' heirs.

WCM suggests that, because Ms. Gervasi is "still trying to sue for causes of action that allegedly arose prior to March 28, 2011," when she inherited the royalty rights, she should be treated as a representative of the estate of Richard A. Whiting. (Docket No. 94 at 4.) Ms. Gervasi, though, did not inherit her rights from Mr. Whiting. She inherited them from her mother Margaret, who does not appear to have been domiciled in California at the time of her death. A cause of action that accrued between the 1981 death of Mr. Whiting's wife and the 2011 death of Margaret Whiting accrued to Margaret, who appears to have been a citizen of New York, as well as any other relevant heir.

"The purpose of section 1332(c)(2) is to prevent the manufacture of diversity jurisdiction by the appointment of an out-of-state representative for an in-state decedent's estate, or the destruction of diversity jurisdiction by appointing an in-state representative of an out-of-state decedent's estate." *Gustafson v. zumBrunnen*, 546 F.3d 398, 402 (7th Cir. 2008) (citing *Steinlage ex rel. Smith v. Mayo Clinic Rochester*, 435 F.3d 913, 917–18 (8th Cir. 2006); *Tank v. Chronister*, 160 F.3d 597, 599–600 (10th Cir. 1998)). That end would not be furthered in the least by an interpretation concluding that, decades after the estate is closed, every property right that was once part of that estate and every cause of action arising out of that property right still

bears an indelible stamp of the decedent's state of citizenship. As long as a plaintiff sues in her individual capacity, based on her own inherited rights, her state of citizenship is her own. Similarly, if a plaintiff pursues a cause of action that accrued to a predecessor who was not a citizen of the same state as the defendant, it does not matter that, somewhere back along the chain, the underlying property was inherited from a decedent who was. Ms. Gervasi's amending the Complaint to limit her claims accordingly would not, therefore, be futile.

## **B. Futility of Amendment: Federal Question Jurisdiction**

WCM argues next that Ms. Gervasi should not be permitted to amend her Complaint to assert federal question jurisdiction because her claims do not arise under federal law. "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." *Metro. Life Ins. Co., v. Taylor*, 481 U.S. 58, 63 (1987) (citations omitted); *see also Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir. 2012) (citing *Merrell Dow Pharm., Inc., v. Thompson*, 478 U.S. 804, 808 (1986)). WCM argues that Ms. Gervasi's claims do not arise under federal law because the only federal issue in this case—whether WCM is entitled to a work-for-hire defense under the Copyright Act—arises only as a defense and therefore cannot confer federal question jurisdiction pursuant to the well-pleaded complaint rule. Ms. Gervasi responds that her claims present a federal question because they arise under the Copyright Act, likening this case to *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124–25 (9th Cir. 2010), in which the Ninth Circuit found federal question jurisdiction based on a contested issue of ownership arising out of the work-for-hire doctrine.

13

In *JustMed*, the plaintiff company filed suit to establish its copyright in code produced by a former employee. *Id.* at 1122–23. Because the plaintiff was the employer of the code's creator, its copyright interest was dependent on the Copyright Act's work-for-hire exception to the rule that "copyright ownership 'vests initially in the author or authors of the work.'" *Id.* at 1125 (quoting 17 U.S.C. § 201(a)); *see* 17 U.S.C. § 201(b). The court, accordingly, found that the company's claim presented a federal question. *JustMed*, 600 F.3d at 1125. Here, in contrast, Ms. Gervasi's claimed rights are based on Mr. Whiting's status as the author and his wife's subsequent contracts. The issue of work-for-hire arises only as a defense. *JustMed*, therefore, does not support a finding of federal question jurisdiction based on the well-pleaded complaint rule. *See Puetz v. Spectrum Health Hosps.*, No. 1:14-CV-275, 2015 WL 3935984, at *5 n.3 (W.D. Mich. June 26, 2015) (citing *JustMed* but finding no federal question jurisdiction in case where work-for-hire would arise only as a defense); *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 931 (N.D. Cal. 2015) (distinguishing cases where "the work-for-hire doctrine would arise only as a defense" from *JustMed*); *Calicraft Distribs., LLC v. Castro*, No. CV 15-01041 BRO (AJW), 2015 WL 1789014, at *6 (C.D. Cal. April 17, 2015) ("That the defendants might claim ownership under the work-for-hire doctrine could not provide a basis for federal question subject matter jurisdiction, as the application of the doctrine would be raised only as a defense." (citation omitted)).

Nor can Ms. Gervasi surmount the well-pleaded complaint rule by relying on the fact that she seeks declaratory judgment. "In the declaratory-judgment context, the existence of federal jurisdiction is determined by reference to a hypothetical non-declaratory suit between the same parties. If a federal question appears in the complaint in this hypothetical suit, then federal jurisdiction would lie between the parties." *Funderwhite v. Local 55, United Ass'n*, 702 F. App'x

308, 312 (6th Cir. 2017) (citing *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012)). Here, the non-declaratory suit between the parties is not hypothetical, but the result is the same. Based on the current status quo between the parties and the respective rights claimed by each, the work-for-hire doctrine arises only as a defense. (*See* Docket No. 35 at 13 (noting that Ms. Gervasi is the "natural plaintiff" in this case).) Accordingly, an amendment to assert federal question jurisdiction would be futile.

**C. Additional Considerations**

Because at least some amendments along the lines proposed by Ms. Gervasi would not be futile, the court must consider any other factors that counsel for or against allowing amendment. The fact that Ms. Gervasi apparently originally claimed to represent an estate that she knew did not exist counts against her as evidence of potential bad faith, as does the fact that she has now provided two proposed Third Amended Complaints that seem to cling to some phantom ability to assert claims or rights on behalf of the estate, even while conceding its nonexistence. Those errors, though, also lend themselves to the more innocent interpretation that Ms. Gervasi simply inadvertently used imprecise language that failed to appreciate the difference between asserting the rights one received as an heir and asserting rights on behalf of the estate as a legal entity. *See Bryant,* 2012 WL 4471589, at *4 (noting that plaintiff beneficiary mistakenly filed as a representative).

WCM, moreover, has not identified any significant prejudice it would endure if amendment were allowed. Whether the estate is a party may (or may not) be relevant to the dates for which damages are available, but its presence or absence is immaterial to the core royalties dispute that gave rise to this case, and it is difficult to see how the interests of justice would be served by needlessly dismissing the case after five years of litigation.

15

Accordingly, the court will grant Ms. Gervasi leave to file a Third Amended Complaint that does not assert claims on behalf of Richard A. Whiting's estate. Ms. Gervasi is cautioned, however, that she is close to—if not at—the limit of the leeway she can reasonably be afforded on this issue. She is urged to file a Third Amended Complaint that has been actually, fully excised of any claims, in either the text or the caption, that would rob this court of diversity jurisdiction—even if she fears that doing so might, for example, put her at risk of limiting her dates of recovery. If Ms. Gervasi does not wish to file such a Complaint, she is within her rights not to do so, and the court will dismiss the case for lack of federal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Ms. Gervasi's Motion for Leave to File Surreply and to File a Third Amended Complaint (Docket No. 91) is **GRANTED** in part and **DENIED** in part, and WCM's Motion to Dismiss for Lack of Jurisdiction (Docket No. 84) is **DENIED AS MOOT**. Ms. Gervasi is **ORDERED** to file a Third Amended Complaint in accordance with this Order or, in the alternative, file a notice that she declines to do so, within fourteen days. If Ms. Gervasi elects not to file a Third Amended Complaint that complies with this Order, her claims will be dismissed.

It is so **ORDERED**.

ENTER this 5th day of February 2018.

_____
ALETA A. TRAUGER
United States District Judge