UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DEBORAH BUSH GERVASI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:12-cv-0627 |
| ) | Judge Aleta A. Trauger |
| **WARNER/CHAPPELL MUSIC, INC.** ) | |
| **A DIVISION OF WARNER MUSIC** ) | |
| **GROUP CORP.,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

Warner/Chappell Music, Inc. ("WCM") has filed a Partial Motion to Dismiss Third Amended Complaint (Docket No. 101), to which Deborah Bush Gervasi has filed a Response (Docket No. 103), and WCM has filed a Reply (Docket No. 104). For the reasons set out herein, WCM's motion will be granted.

**I. BACKGROUND AND PROCEDURAL HISTORY[1]**

Richard A. Whiting was an early 20th-century songwriter, known for such compositions as "On the Good Ship Lollipop" and "Hooray for Hollywood." (Docket No. 100 ¶ 6.) In 1936, Mr. Whiting entered into a music publishing agreement with Warner Bros. Pictures. (*Id.* ¶ 10.) In 1938, Mr. Whiting died, leaving his intellectual property to his wife, Eleanore, and his daughters, Barbara and Margaret. (*Id.* ¶ 11.) In 1943, Eleanore Whiting entered into an agreement with Music Publishers Holding Corporation ("MPHC"), whereby she transferred her interest in the renewal copyrights of some of Mr. Whiting's compositions to the company in exchange for 50% of the domestic licensing receipts. (*Id.* ¶¶ 12–13.) Shortly thereafter, the parties amended the

---
[1] The underlying facts of the case are taken primarily from Ms. Gervasi's Third Amended Complaint. (Docket No. 100.) They are accepted as true for purposes of the Motion to Dismiss.

agreement to grant Ms. Whiting a share of international licensing for those compositions, at rates based on the rates that Mr. Whiting had accepted under certain earlier publishing contracts, including the 1936 agreement. (*Id.* ¶ 14.) In 1953, the parties amended the agreement again, to increase Ms. Whiting's international licensing share to 50%. (*Id.* ¶ 15.) Eleanore Whiting died in 1981, leaving her rights to Barbara and Margaret. (*Id.* ¶ 7.) Documents produced by Ms. Gervasi indicate that Eleanore died, and her estate was administered, in California. (Docket No. 91-3 at 95, 101.) Margaret Whiting died in 2011, leaving the rights that she had inherited to her daughter, Ms. Gervasi. (Docket No. 100 ¶ 29.) Documents produced by Ms. Gervasi indicate that Margaret died, and her estate was administered, in New York. (Docket No. 91-3 at 102.) WCM is the successor to Warner Bros. Pictures and MPHC with regard to the Whiting compositions. (Docket No. 100 ¶ 2.)

In December 2006, while Ms. Gervasi was caring for her ailing mother, she reviewed the records of licensing payments that her mother had received from WCM and noticed payment variations that she could not explain, given her understanding of her mother's rights. (*Id.* ¶¶ 17–18.) Ms. Gervasi and her mother, after researching the matter, came to believe that WCM had been underpaying the royalties. They informed WCM, but they mostly received either silence or resistance to their complaints. After her mother's death, Ms. Gervasi, as the heir to her mother's royalty rights, continued correspondence with WCM in an attempt to recoup the underpayments, but WCM took the position that the royalties had been calculated correctly because the relevant compositions were governed by the 1936 agreement, not any subsequent agreements. (*Id.* ¶¶ 23–34.)

On June 20, 2012, Ms. Gervasi filed her Complaint in this case. (Docket No. 1.) She filed a First Amended Complaint two days later. (Docket No. 4.) The Complaint's caption indicated

that Ms. Gervasi was suing "individually and on behalf of the estate of Richard A. Whiting." (*Id.* at 1.) The text of the Complaint referred to Ms. Gervasi as "the legal representative of the estate of Richard A. Whiting." (*Id.* ¶ 36.) The Complaint, which pleaded claims for breach of contract, breach of the duty of good faith and fair dealing, accounting, and declaratory judgment, cited only one basis for this court's subject matter jurisdiction—diversity of the parties under 28 U.S.C. § 1332. (*Id.* ¶¶ 3, 34–57.)

On December 3, 2012, WCM filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 13.) Among the arguments made by WCM was that Ms. Gervasi cannot assert claims for damages related to royalties due prior to her inheritance of her mother's rights on March 28, 2011. (Docket No. 14 at 8.) Ms. Gervasi responded that the date of her personal inheritance did not limit her period of recovery because her "claims [were] brought on behalf of both herself and the estate and therefore have no such time limitation." (Docket No. 17 at 9 n.2.) On January 30, 2014, Senior Judge John T. Nixon granted the Motion to Dismiss in part and denied it in part.[2] (Docket No. 35.) Specifically, Judge Nixon dismissed Ms. Gervasi's good faith and fair dealing and accounting claims without prejudice but left her other claims intact. (*Id.* at 14.) Regarding Ms. Gervasi's claims for damages incurred prior to her mother's death, the court wrote: "[A]s Gervasi filed this suit on behalf of both herself and the Whiting estate, she is not estopped from alleging injuries suffered by her predecessors in interest occurring prior to when her interest in the estate vested on March 28, 2011." (*Id.* at 9.)

Litigation continued, and, on April 11, 2016, Ms. Gervasi filed a Motion for Leave to Amend the First Amended Complaint. (Docket No. 61.) Her proposed Second Amended Complaint still purported to be filed by Ms. Gervasi both in her individual capacity and on behalf

---

[2] The case was reassigned to this judge upon Judge Nixon's retirement on December 31, 2016. (Docket No. 68.)

of Richard A. Whiting's estate. (Docket No. 61-1 at 1, ¶¶ 28, 49.) On January 30, 2017, this court granted Ms. Gervasi leave to amend in part, holding that some of her claims for royalties prior to either June 20, 2008 or April 11, 2012, depending on the composition, were time-barred, but that other claims could proceed, for the time being, without a temporal limitation, because Ms. Gervasi might be able to show that those claims were timely under the discovery rule. (Docket No. 70 at 14.)

On October 16, 2017, WCM filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction. (Docket No. 84.) For the first time, WCM noted that, at the time of his death, Richard A. Whiting was, like WCM, a citizen of California for jurisdictional purposes, bringing the court's diversity jurisdiction into question. (*Id.* at 1.) In Response, Ms. Gervasi argued that, despite her several prior statements to the contrary, she is not the representative of Richard A. Whiting's estate in any formal sense, but only in the sense that she is suing to vindicate the rights of his heirs. (Docket No. 87 at 1–2.) While WCM's Motion to Dismiss was pending, Ms. Gervasi filed a Motion for Leave to File Surreply and to File a Third Amended Complaint, in which she sought leave to amend her complaint to clarify that she is not seeking to assert any claims as a formal legal representative of the Whiting estate. (Docket No. 91.) Ms. Gervasi also sought, for the first time, to assert federal question jurisdiction. (Docket No. 91-4 ¶ 4.)

On February 5, 2018, the court entered a Memorandum and Order granting Ms. Gervasi's motion in part, denying it in part, and denying WCM's motion as moot. (Docket No. 98.) The court held that Ms. Gervasi's assertion of federal question jurisdiction would be futile, but permitted her to amend her complaint to make clear that she is not asserting claims on behalf of the estate of Richard Whiting. (*Id.* at 15-16.) On February 19, 2018, Ms. Gervasi, consistently

4

with the direction of the court, filed a Third Amended Complaint that does not purport to assert any rights on behalf of Richard Whiting's, or any other, estate. (Docket No. 100.)

On March 5, 2018, WCM filed a Partial Motion to Dismiss Third Amended Complaint, seeking the dismissal of all claims that accrued prior to Margaret Whiting's death on March 28, 2011, on the ground that Ms. Gervasi has no right to assert those claims because "[o]nly a lawfully appointed representative of the estate of Margaret Whiting could sue for causes of action that accrued during her lifetime." (Docket No. 101 at 1.) "Similarly," WCM argued, "only a lawfully appointed representative of the estate of [Eleanore Whiting] could sue for causes of action that accrued during her lifetime." (*Id.*) In response, Ms. Gervasi argues that, under the laws of the states in which her mother and grandmother's estates were administered, an heir may assert a decedent's cause of action in her personal capacity upon that cause of action passing from the estate of the decedent to the heir. (Docket No. 103 at 2.)

## II. LEGAL STANDARD

"Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). When a Rule 12(b)(1) motion contests subject matter jurisdiction factually, the court must weigh the evidence in order to determine whether it has the power to hear the case, without presuming the challenged allegations in the complaint to be true. *Id.*; *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When the facts are disputed in this way, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary," without converting the motion into one for summary judgment. *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992), *aff'd sub nom. Myers v.*

5

*United States*, 17 F.3d 890 (6th Cir. 1994); *see also Gentek*, 491 F.3d at 330. It is then the plaintiff's burden to show that jurisdiction is appropriate. *DLX*, 381 F.3d at 516. If a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, to the contrary, the plaintiff's burden is "not onerous," and the plaintiff need only demonstrate that the complaint alleges a "substantial" federal claim, meaning that prior decisions do not inescapably render the claim frivolous. *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true. *Gentek*, 491 F.3d at 330. Thus, "the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248.

### III. ANALYSIS

WCM's sole argument is that, as a matter of California law (with regard to alleged underpayments to Eleanore Whiting) and New York law (with regard to alleged underpayments to Margaret Whiting), the only person who can state a claim that originally accrued to either respective decedent is a person filing as a representative of the decedent's estate or some legal equivalent thereof. WCM does not dispute, at least at this stage, that Margaret Whiting inherited at least a share of Eleanore's heritable rights related to Richard Whiting's compositions, or that Ms. Gervasi then inherited those rights from Margaret. In other words, WCM does not appear to dispute that, if someone *could* sue under the decedents' accrued causes of action in her individual capacity, Ms. Gervasi would be such an individual. Rather, WCM's position is that, if the estates themselves, acting through their representatives, do not sue on the decedents' rights, then no one can—even if the causes of action are, in every other sense, timely and viable. WCM's motion, then, hinges on a single question, played out across two jurisdictions: Under California and New

York law, can an individual heir assert a cause of action that initially belonged to the decedent but was never asserted by the decedent or the decedent's now-closed estate?

As far as California law goes, the answer appears, quite clearly, to be yes. California's statutes expressly contemplate that a "beneficiary of a decedent's estate" may "succeed to a cause of action," either through a will or through intestate succession. Cal. Civ. Proc. Code § 377.10. Indeed, California's Court of Appeal considered and rejected arguments very similar to WCM's in *Parsons v. Tickner*, 37 Cal. Rptr. 2d 810, 814 (1995), where the heir of another successful songwriter sought to recover on claims that, the defendant argued, could only be brought by a representative of the decedent's estate. In that case, the decedent had died intestate, and his assets were inventoried and distributed, after which his estate was closed. *Id.* at 812–14. Later, however, the decedent's heirs discovered a number of potential causes of action against a company that the decedent had worked with and that had claimed—the heirs learned, falsely—to have obtained ownership of some of the decedent's copyrights during his life. An heir brought suit against that company, but the defendant argued that only a representative of the decedent's estate could bring the claim. The Court of Appeal disagreed, writing that the law "allow[ed] [the heir] to independently pursue the cause of action she inherited from the deceased . . . in her capacity as a successor in interest to" the decedent. *Id.* at 816. By the same token, an appropriate heir of Eleanore Whiting—such as Margaret Whiting—would have been free to bring an inherited cause of action as an heir without proceeding on behalf of the estate.

WCM argues that Ms. Gervasi cannot avail herself of the rule applied in *Parsons v. Tickner*, because, as Eleanore Whiting's successor in interest, she would be no different from an estate representative for the purpose of diversity jurisdiction under 28 U.S.C. § 1332(c)(2), thereby destroying diversity. Section 1332(c)(2), however, says nothing about successors in

7

interest; it governs the determination of diversity of jurisdiction only for "the legal representative of [an] estate." The very premise of *Parsons v. Tickner*, though, was that the plaintiff was *not* a representative of the decedent's estate. 37 Cal. Rptr. 2d at 814. In support of its contention that the federal diversity statute makes no distinction between a representative of an estate and a successor in interest, WCM cites a single district court case, *Shuler v. EmeriCare Inc.*, No. LA CV17-02684 JAK (Ex), 2017 U.S. Dist. LEXIS 118150, at *7 (C.D. Cal. July 27, 2017). *Shuler*, however, devotes barely a handful of words to 28 U.S.C. § 1332(c)(2)—understandably, given that it was undisputed, in that case, that the individual plaintiff and the relevant estate were *both* citizens of California. The dispute in that case, rather, was over the citizenship of one corporate defendant, and the court's analysis on that issue has no bearing on the questions raised here. A few cursory lines on an uncontested issue in one case are not enough to persuade this court to depart from the plain language of 28 U.S.C. § 1332(c)(2).

If California wished to provide that a cause of action could not be inherited by an individual heir, it could do so. For example, it could, like some historical courts, follow the maxim of *actio personalis moritur cum persona*—"an action dies with the person." *Harris v. Nashville Tr. Co.*, 162 S.W. 584, 586 (Tenn. 1914). Similarly, if California wished to require a plaintiff heir who discovered a new cause of action to reopen the decedent's estate and sue in her capacity as representative, its statutes could say as much. In fact, as the *Parsons v. Tickner* court recognized, that was arguably the state of the law prior to a revision of California's probate laws in 1993. 37 Cal. Rptr. 2d at 814. California's legislature, however, has chosen neither option. As a matter of California law, a cause of action that originally belonged to a decedent may, through the ordinary laws of inheritance, come to belong to an heir. Because the claim would then belong

to the heir, and no representative of the estate would come into play, 28 U.S.C. § 1332(c)(2) would not, by its own language, apply.

Ms. Gervasi, however, did not inherit her rights directly from Eleanore Whiting's estate in California, but only later, via Margaret Whiting's estate in New York.[3] New York's statutes governing estates and inheritance, like California's, provide that "[n]o cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed." N.Y. Est. Powers & Trusts Law ("EPTL") § 11-3.2(b). As WCM points out, however, EPTL § 11-3.2(b) provides only that a decedent's cause of action "may be brought or continued by the personal representative of the decedent" and, unlike California's statutes, does not discuss an action's passing to an heir in her individual capacity. *Id.* WCM construes that language as suggesting that a cause of action can only be brought by a representative of the decedent's estate. Ms. Gervasi suggests that EPTL § 11-3.2(b) merely confirms that a cause of action survives a decedent's death. She argues that its discussion of claims being brought by a representative should not be read as exclusive.

A number of cases, however, have construed EPTL § 11-3.2(b) as barring heirs from bringing causes of action that the statute contemplates as having been brought by a representative of the estate. In *Stallsworth v. Stallsworth*, for example, New York courts considered whether plaintiff heirs had "standing to commence an action to recover and preserve an asset alleged to have been wrongfully diverted from the decedent's estate prior to her death."138 A.D.3d 1102, 1103 (N.Y. App. Div. 2016). The Appellate Division concluded that the heirs did not have standing, explaining:

---

[3] Neither party has devoted significant attention to the issue of whether, in fact, New York and/or California law are the correct sources of law for resolving this matter. In any event, Ms. Gervasi's Response does not appear to dispute that Ms. Gervasi's inheritance of rights from Margaret Whiting is governed by New York law. (Docket No. 103 at 2.)

> EPTL 11-3.2 (b) provides that a cause of action for injury to person or property is not lost because of the death of the person in whose favor the cause of action existed, as the cause of action may be commenced or continued by the decedent's personal representative. "[A] beneficiary, absent extraordinary circumstances . . . , cannot act on behalf of [an] estate or exercise [a] fiduciary's rights with respect to estate property." Rather, "[t]he appropriate avenue is to be appointed a representative pursuant to the requirements of the EPTL."

*Id.* at 1102–03 (quoting *Jackson v Kessner*, 206 A.D.2d 123, 127 (N.Y. App. Div. 1994); *Schoeps v Andrew Lloyd Webber Art Found.*, 66 A.D.3d 137, 140-41 (2009); citing *McQuaide v Perot*, 223 N.Y. 75, 79 (1918)). "[E]ven a party who is the sole beneficiary of the estate" cannot pursue the estate's cause of action unless she is appointed representative, at least absent extraordinary circumstances—none of which Ms. Gervasi has identified here. *Schoeps*, 66 A.D.3d at 140–41.

Instead, Ms. Gervasi cites to *Ellington v. EMI Music, Inc.*, in which the New York courts appear to have allowed a claim much like hers to proceed to disposition on the merits. 21 N.E.3d 1000 (N.Y. 2014). The Court of Appeals opinion that Ms. Gervasi cites, however, includes no discussion of the extent of the decedents' heirs' rights to raise claims for underpayments made prior to the date of their inheritance, instead merely proceeding to the merits of the case. In other words, Ms. Gervasi follows WCM's earlier lead in attempting to turn one case's non-analysis of an issue into a precedent. Because *Ellington* does not actually address the questions raised here, the court cannot construe it as endorsing a departure from the rule explicitly laid out in *Stallworth*, *Schoerps*, and elsewhere. The most persuasive reading of New York law remains that claims for money that was originally owed to Margaret Whiting must be raised via Ms. Whiting's estate. The fact that California has statutorily adopted a contrary rule merely highlights, by contrast, that New York has not.

Ms. Gervasi has been aware of this potential defect with regard to some of her claims since, at the latest, WCM's December 3, 2012 Motion to Dismiss. (*See* Docket No. 14 at 8.) Judge Nixon's opinion of January 30, 2014, moreover, confirmed that Ms. Gervasi's right to pursue claims based on payments due prior to March 28, 2011, had been premised on her initially raising claims both in her individual capacity and on behalf of the Whiting estate. (Docket No. 35 at 9.) Ms. Gervasi nevertheless elected to amend her complaint both to salvage federal jurisdiction and to reflect the reality that she does not, in fact, profess to have any legal right to proceed on behalf of any decedent's estate. By making that amendment and proceeding, now, only on her own behalf, she must accept the limitations that New York estate law places on how her mother's rights can and cannot be vindicated following her death. The court, accordingly, will dismiss all claims raised by Ms. Gervasi based on payments due prior to March 28, 2011.

## IV. CONCLUSION

For the foregoing reasons, WCM's Partial Motion to Dismiss Third Amended Complaint (Docket No. 101) is hereby **GRANTED**. All claims based on underpayment of royalties due before March 28, 2011, are hereby **DISMISSED**. Ms. Gervasi's claims based on underpayments made after that date remain for trial.

It is so **ORDERED**.

ENTER this 7th day of May 2018.

_____
ALETA A. TRAUGER
United States District Judge