UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBORAH BUSH GERVASI, ) | |
| Individually and on behalf of the ) | |
| ESTATE OF RICHARD A. ) | |
| WHITING, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 3:12-cv-0627 |
| ) | Judge Aleta A. Trauger |
| WARNER/CHAPPEL MUSIC, INC. ) | |
| A DIVISION OF WARNER MUSIC ) | |
| GROUP CORP., ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

Deborah Bush Gervasi has filed a Motion for Leave to File Fourth Amended Complaint (Docket No. 145), to which Warner/Chappel Music, Inc. ("WCM") has filed a Response (Docket No. 146), and Ms. Gervasi has filed a Reply (Docket No. 151). For the reasons set out herein, Ms. Gervasi's Motion for Leave to File Fourth Amended Complaint will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

Richard A. Whiting was an early 20th-century songwriter, known for such compositions as "Oh the Good Ship Lollipop" and "Hooray for Hollywood." (Docket No. 100 ¶ 6.) In 1936, Mr. Whiting entered into a music publishing agreement with Warner Bros. Pictures. (*Id.* ¶ 10.) In 1938, Mr. Whiting died, leaving his intellectual property to his wife, Eleanore, and his daughters, Barbara and Margaret. (*Id.* ¶ 11.) In 1943, Eleanore Whiting entered into an agreement with Music Publishers Holding Corporation ("MPHC"), whereby she transferred her interest in the

---

[1] The underlying facts of the case are taken primarily from Ms. Gervasi's Third Amended Complaint. (Docket No. 100.) Except where otherwise noted, the facts are accepted as true for purposes of the Motion to Amend.

renewal copyrights of some of Mr. Whiting's compositions to the company in exchange for 50% of the domestic licensing receipts for the compositions. (*Id.* ¶¶ 12–13.) Shortly thereafter, the parties amended the agreement to grant Ms. Whiting a share of international licensing at the same rates as those for domestic licensing under Mr. Whiting's original publishing contracts, including the 1936 agreement. (*Id.* ¶ 14.) In 1953, the parties amended the agreement again, to increase Ms. Whiting's international licensing share to 50%. (*Id.* ¶ 15.) Eleanore Whiting died in 1981, leaving her rights to Margaret; Margaret died in 2011, leaving her rights to her daughter, Ms. Gervasi. (*Id.* ¶¶ 7, 29.) Ms. Gervasi lived in Tennessee when this case was initiated and now lives in New York. (*Id.* ¶ 1.) WCM, which is the successor-in-interest of MPHC and Warner Bros. Pictures, is based in California. (*Id.* ¶ 2.)

In December 2006, Ms. Gervasi, while caring for her ailing mother, reviewed the records of licensing payments that her mother had received from WCM and noticed payment variations that she was unable to explain. (*Id.* ¶¶ 17–18.) After researching the matter, Ms. Gervasi came to believe that WCM had been underpaying the royalties. WCM, however, took the position that the royalties had been calculated correctly because the relevant compositions were governed by the 1936 agreement, not any subsequent agreements. (*Id.* ¶¶ 19–27.)

On June 20, 2012, Ms. Gervasi, having inherited her mother's rights, filed her Complaint in this case. (Docket No. 1.) She filed a First Amended Complaint two days later. (Docket No. 4.) The First Amended Complaint's caption indicated that Ms. Gervasi was suing "individually and on behalf of the estate of Richard A. Whiting." (*Id.* at 1.) The Complaint referred to Ms. Gervasi as "the legal representative of the estate of Richard A. Whiting" and asserted that the defendant was "obligated to account to and pay Plaintiff royalties due to the estate of Richard A. Whiting." (*Id.* ¶ 36.)

On April 11, 2016,[2] Ms. Gervasi filed a Motion for Leave to Amend the First Amended Complaint. (Docket No. 61.) Her proposed Second Amended Complaint still purported to be filed by Ms. Gervasi both in her individual capacity and on behalf of Richard A. Whiting's estate. (Docket No. 61-1 at 1, ¶¶ 28, 49.) On January 30, 2017, after reassignment of this case to the undersigned after the retirement of the senior judge previously assigned, this court granted Ms. Gervasi leave to amend in part, holding that some of her claims for damages prior to either June 20, 2008 or April 11, 2012, depending on the composition, were time-barred. (Docket No. 70 at 14.)

On October 16, 2017, WCM filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction. (Docket No. 84.) For the first time, WCM noted that, at the time of his death, Richard A. Whiting was, like WCM, a citizen of California for jurisdictional purposes. (*Id.* at 1.) A federal court can exercise diversity jurisdiction "only if each of the plaintiffs comes from a different State from each of the defendants." *Evanston Ins. Co. v. Hous. Auth. of Somerset*, 867 F.3d 653, 656 (6th Cir. 2017) (citations omitted). Pursuant to 28 U.S.C. § 1332(c)(2), "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." Ms. Gervasi's inclusion of claims on behalf of the Richard A. White Estate, therefore, destroyed diversity.

In Response, Ms. Gervasi argued that, despite her several prior statements to the contrary, she was not the representative of Richard A. Whiting's estate in any formal sense, but only in the sense that she was suing to vindicate the rights of his heirs:

> Mr. Whiting's estate was closed decades ago when his wife and children inherited the copyrights at issue in this case. Ms. Gervasi, who was not even born when her grandfather died, was never the legal representative of his estate and never

---

[2] During the four years between 2012 and 2016, a motion to dismiss was litigated, deadlines were extended, and the trial date was advanced, by agreement, several times.

> intended to sue in that capacity, which she obviously could not have done. Her intent in referring to her grandfather's estate was to identify the source of her copyrights and the fact that she was suing not only individually, as one of her grandfather's heirs, but also on behalf of her cousin—her grandfather's other heir and co-owner of the copyrights.

(Docket No. 87 at 1–2.) While WCM's Motion to Dismiss was pending, Ms. Gervasi filed a Motion for Leave to File Surreply and to File a Third Amended Complaint, in which she sought leave to amend her complaint to clarify that she was not seeking to assert any claims as a formal legal representative of the Whiting estate. Ms. Gervasi also sought to add federal question jurisdiction as a theory of this court's jurisdiction over the case. (Docket No. 91.) The court's consideration of Ms. Gervasi's motion was complicated by the fact that she failed to provide a draft Third Amended Complaint in which she had actually removed all assertions that she could, or at some point did, represent the Richard A. Whiting Estate, despite two attempts to do so. (Docket Nos. 91-4 & 97-1; *see* Docket No. 98 at 8.)

On February 5, 2018, the court granted Ms. Gervasi's motion in part, denied it in part and denied WCM's Motion to Dismiss as moot. (Docket No. 98 at 1.) The court rejected Ms. Gervasi's assertion of federal question jurisdiction but allowed her to amend her Second Amended Complaint to clarify her relationship with the Richard A. Whiting Estate. (*Id.* at 14, 16.) The court wrote, however:

> Ms. Gervasi is cautioned . . . that she is close to—if not at—the limit of the leeway she can reasonably be afforded on this issue. She is urged to file a Third Amended Complaint that has been actually, fully excised of any claims, in either the text or the caption, that would rob this court of diversity jurisdiction—even if she fears that doing so might, for example, put her at risk of limiting her dates of recovery.

(Docket No. 98 at 16.)

Ms. Gervasi filed a Third Amended Complaint in response to the court's instructions (Docket No. 100), and, as the court and likely Ms. Gervasi expected, WCM filed a Partial

Motion to Dismiss, arguing that, because Ms. Gervasi was no longer asserting any claims on behalf of the Richard A. Whiting Estate, many of her older claims should be dismissed as not accruing to Ms. Gervasi as an individual. (Docket No. 101.) On May 7, 2018, the court granted the motion, dismissing all claims based on underpayment of royalties due before March 28, 2011. (Docket No. 105 at 11.) The parties participated in a settlement conference on November 27, 2018, which reconvened on February 20, 2019, without reaching a settlement. (Docket Nos. 125 & 135.)

On December 17, 2019, Ms. Gervasi filed a Motion for Leave to File Fourth Amended Complaint. (Docket No. 145.) Ms. Gervasi seeks to add a new plaintiff, her cousin Richard A. Whiting Smith, whom Ms. Gervasi identifies as another heir with a right to receive royalty co-payments. (*Id.* ¶ 1.) Ms. Gervasi also seeks to allege several new facts based on information uncovered in discovery and settlement discussions. Specifically, Ms. Gervasi seeks to allege that WCM (1) failed to take appropriate action in response to the Walt Disney Company's unauthorized use of "Hooray for Hollywood" in a ride; and (2) "failed to enforce specific terms in a written Commercial Synchronization License Agreement" with Coca-Cola, particularly regarding the allegedly unauthorized use of "Hooray for Hollywood" in an ad for Diet Coke that played in movie theaters. (*Id.* ¶¶ 5–6.) WCM filed a Response opposing the motion. (Docket No. 146.) The trial is set to begin on October 24, 2020.

## II. LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to

the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

### III. ANALYSIS

#### A. Disney and Coca-Cola Claims

WCM argues first that allowing Gervasi to amend her complaint to add the allegations about Disney and Coca-Cola, after over seven years of litigation, including several prior amendments, would not be in the interests of justice. WCM points that the theory of liability that would be supported by the new allegations—that WCM is liable to Ms. Gervasi based on its failure to enforce the song's copyright against two third parties—is entirely new to the case. Ms. Gervasi's prior claims were based on (1) her being paid an incorrect royalty rate and (2) WCM's use of foreign sub-publishers with excessive foreign-collection fees. The proposed amendment would, therefore, introduce new legal and factual questions with only a limited relationship to the questions that the parties have been litigating for three-quarters of a decade. WCM argues that it would experience significant prejudice from such an amendment because WCM would, in effect, be required to litigate two new complete copyright infringement cases that it had not previously contemplated. Doing so would, WCM alleges, require "fact discovery on liability, fact discovery on damages, expert discovery on liability, expert discovery on damages, briefing dispositive motions, and trying lengthy, complex copyright-infringement claims to a jury."[3] (Docket No. 146 at 7.) WCM points out that litigation over the Disney and Coca-Cola claims might also be

---

[3] Indeed, the currently pending discovery disputes go a long way toward confirming WCM's concerns.

particularly challenging, because it would center around the allegedly infringing activity of third parties with no connection to this litigation. (*Id.*)

Ms. Gervasi responds that she is not seeking to assert a new theory of liability, but rather to "state[] additional facts that show a breach of Defendant's duty of good faith and fair dealing." (Docket No. 151 at 4.) If all Ms. Gervasi wanted to do was assert additional facts in support of her preexisting claims, however, there would be no need to amend. To the contrary, Ms. Gervasi's own briefing confirms that she is seeking to add a theory of liability based on an "impl[ied] . . . obligation on the part of [WCM] to make reasonable efforts to exploit" the "Hooray for Hollywood" copyright. (*Id.* (quoting *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1157 (S.D.N.Y. 1988)). She has not identified any similar allegation previously raised in this case. She relies solely on the fact that the underlying cause of action, for breach of the duty of good faith and fair dealing, is one she has already pleaded.

The fact that Ms. Gervasi is not adding a new *type* of cause of action does not negate the significant change she is making to her case or diminish the potential prejudice to WCM. Ms. Gervasi's attempted amendment is the equivalent of a plaintiff pleading a claim for breach of contract based on one provision and litigating based on that provision for years, only to seek an amendment alleging a totally different breach of contract based on a different provision—or even a different contract. The fact that the cause of action is the same does not change the underlying reality that the substance of the lawsuit has been fundamentally changed. WCM's new discovery and litigation burdens, moreover, would be no lighter simply because the new theory of liability happens to be, in its broadest strokes, of a type already pleaded. Because Ms. Gervasi seeks to make such a consequential change so late in the process, with trial impending and after repeated earlier amendments, the court will deny this aspect of her request.

**B. Addition of Mr. Smith as Plaintiff**

Adding Mr. Smith as a plaintiff would likely be at least somewhat less prejudicial than allowing Ms. Gervasi to assert a new theory of liability. Ms. Gervasi characterizes Mr. Smith's rights as equivalent to hers, meaning that any new discovery or argumentation would be limited to discrete issues related to Mr. Smith himself, such as verifying his inheritance of the relevant rights. WCM argues, however, that, even if the court were otherwise inclined to allow Mr. Smith to join the case, it cannot, because the court lacks jurisdiction over WCM with regard to any dispute it has with Mr. Smith.[4] Ms. Gervasi's only response is that the WCM's jurisdictional challenge is "premature," and "[t]esting the sufficiency of the Complaint is better reserved for a Motion to Dismiss rather than an Opposition to a Motion For Leave." (Docket No. 151 at 8.) District courts, however, routinely consider issues of jurisdiction when considering motions to amend, in the context of evaluating whether an amendment is futile. *See, e.g.*, *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 962 (N.D. Ohio 2018) (denying leave to amend because court lacked jurisdiction); *Stirling v. Hunt*, No. 12-2737, 2013 WL 3328674, at *10 (W.D. Tenn. July 1, 2013) (same); *Raymond v. Tenn. Valley Auth.*, No. 3:09-CV-048, 2011 WL 13123608, at *3 (E.D. Tenn. Apr. 14, 2011) (same).

In order for this court to exercise personal jurisdiction over a non-resident defendant, such as WCM, the defendant must have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v.*

---

[4] Although Mr. Smith appears to have no personal relationship with Tennessee in his own right, he can consent to personal jurisdiction over him. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'") (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). The only obstacle to jurisdiction, then, is the fact that the court's specific jurisdiction over WCM is, WCM argues, limited to Ms. Gervasi's claims.

8

*Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct bases for personal jurisdiction. *Id.* at 417-18. General jurisdiction allows the court to "exercise jurisdiction over any claims a plaintiff may bring against the defendant," whereas specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678–79 (6th Cir. 2012) (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). WCM does not dispute that the court has specific jurisdiction over it with regard to Ms. Gervasi's claims, based on Ms. Gervasi's residence in Tennessee at relevant times and WCM's payments to her. WCM disputes, however, that the court has general jurisdiction over it or has specific jurisdiction with regard to any claims by Mr. Smith.

**1. General Jurisdiction**

A court may exercise general jurisdiction over a non-resident defendant when its contacts "are so continuous and systematic as to render [him] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 914, 919 (2011) (internal quotation marks and citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 924 (citation omitted).

Ms. Gervasi concedes that WCM is a Delaware corporation based out of California. (Docket No. 145-1 ¶ 3.) With regard to jurisdiction in Tennessee, she asserts only that WCM "transacts substantial business in the State of Tennessee" and "maintains an office in this Judicial District." (*Id.* ¶ 5.) Those bare-bones allegations might describe a situation in which this court had general jurisdiction over WCM, but they fall far short of satisfying Mr. Smith's burden to

"'establish[] with reasonable particularity' those specific facts that support jurisdiction." *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (*quoting Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). The court, therefore, cannot assume that general jurisdiction exists.

### 2. Specific Jurisdiction

The assertion of specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks and citations omitted). Unlike general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

The Sixth Circuit has established a three-part test for determining whether the exercise of specific jurisdiction is consistent with the principles of due process, called the *Mohasco* test. *See S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1969). Under this test, the exercise of such jurisdiction is proper if the court finds: "(1) purposeful availment 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a 'cause of action . . . aris[ing] from activities' in the state, and (3) a 'substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *Mohasco*, 401 F.2d at 381). If any of the three requirements is not met, personal jurisdiction may not be invoked. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012).

Ms. Gervasi has pleaded no basis pursuant to which the court could exercise specific jurisdiction over WCM with regard to its conflict with Mr. Smith. Mr. Smith is not alleged to

have lived in Tennessee at any point, and there is no basis in the proposed Fourth Amended Complaint for concluding that Tennessee played any role whatsoever in the dealings between Mr. Smith and WCM. The proposed amendment therefore fails to establish a basis for specific jurisdiction with regard to his claims.

### 3. Pendent Personal Jurisdiction

Although Ms. Gervasi raises no such argument, she might argue that the court has "pendent personal jurisdiction" over Mr. Smith's claims against WCM. "Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *United States v. Botefuhr,* 309 F.3d 1263, 1272 (10th Cir. 2002) (citations omitted); *see also Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 667 (S.D. Ohio 2011) (acknowledging doctrine of pendent personal jurisdiction). Pendent personal jurisdiction—which is sometimes characterized as a species of supplemental jurisdiction and sometimes referred to as a distinct doctrine —"enables a court having original specific jurisdiction over a person with regard to a particular claim, to exercise jurisdiction over other claims involving that person for which it otherwise may not have jurisdiction, so long as the other matters 'form part of the same case or controversy.'" *i play, inc. v. Aden & Anais, Inc.*, 186 F. Supp. 3d 518, 525–26 (W.D.N.C. 2016) (quoting 28 U.S.C. § 1367); *see* Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1069.7 (4th ed.) (discussing basis for recognizing pendent personal jurisdiction). If Ms. Gervasi and Mr. Smith could establish that their claims are effectively identical and arise out of the same case or controversy, therefore, pendent personal jurisdiction might be appropriate.

Ms. Gervasi, however, has not raised this argument. Indeed, she has not raised any jurisdictional argument at all. Rather, despite the fact that the court has already decided multiple motions to dismiss (Docket Nos. 13, 84, 101) and the fact that the trial date is approaching, she merely asks to leave the issue of jurisdiction for another day and yet another motion. The court, therefore, must consider whether the interests of justice favor allowing an amendment in such a situation.

### 4. Interests of Justice

Ms. Gervasi is correct that the court could, in its discretion, allow Ms. Gervasi to add Mr. Smith as a plaintiff and then allow WCM to re-raise its jurisdictional challenge through its own motion. That Ms. Gervasi has assumed that she *will* be allowed to do so, however, shows an extraordinarily cavalier attitude toward the court's time, as well as the time of her opposing party. Rather than adequately brief an issue in her Reply, she has simply assumed that she can subject all involved to another round of briefing in the future. Ms. Gervasi's now well-established pattern of failing to address problems with her complaint in an efficient manner weighs against allowing her to continue. The last time she sought an amendment, it took her three tries to make the simple changes necessary. The court is not inclined to allow her to stretch the process out again.

Moreover, while Ms. Gervasi can argue that the Disney and Coca-Cola claims are only arising now because of recently-discovered facts, she cannot argue the same with regard to adding Mr. Smith. To the contrary, her failure to include Mr. Smith until now is just another iteration of Ms. Gervasi's long-running failure to accurately account for the complexities of how the rights to Mr. Whiting's royalties descended. Ms. Gervasi first falsely claimed to represent the Richard A. Whiting Estate. Only after she learned that that situation posed a jurisdictional

obstacle did she clarify, on October 30, 2017, that she had actually only meant to suggest that she was "suing not only individually, as one of her grandfather's heirs, but also on behalf of her cousin," Mr. Smith. (Docket No. 87 at 1–2.) But when she sought leave to file her Third Amended Complaint shortly thereafter, she made no effort to add Mr. Smith as a plaintiff or to provide any authority to assert his rights. The decision to wait until now to add Mr. Smith is therefore wholly unjustified. An amendment adding him should have been sought, at the latest, alongside the request for leave to clarify Ms. Gervasi's relationship with the Estate. The request to add Mr. Smith only now is a direct product of undue delay and a failure, after repeated attempts, to remedy the flaws of Ms. Gervasi's complaint. The court, therefore, will deny leave.

## IV. CONCLUSION

For the foregoing reasons, Ms. Gervasi's Motion for Leave to File Fourth Amended Complaint (Docket No. 145) is hereby **DENIED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge